[No. 19295.   Department One.—February 15, 1894.]

In the Matter of the Estate of JONATHAN THOMPSON, Deceased.

| 101 | 349 |
| 102 | 541 |
| 101 | 349 |
| 107 | 594 |
| 101 | 349 |
| 110 | 277 |
| 101 | 349 |
| 111 | 446 |
| 112 | 294 |
| 101 | 349 |
| 117 | 546 |
| 101 | 349 |
| 137 | 82 |
| 101 | 349 |
| 140 | 352 |

Estates of Deceased Persons—Removal of Trustees—Equity Jurisdiction—Citation in Probate Proceeding—Waiver of Objection.— A petition filed in the superior court after the final distribution of the estate of a decedent, asking for an accounting and removal of trustees, to whom the residue of the estate had been distributed, and alleging their mismanagement of the estate, and their failure to report or account, will be regarded as a bill in equity addressed to the equitable power of the superior court, and the objection that the petition was entitled "in the matter of the estate" of the decedent, and that the trustees were brought in by citation from the probate division of the superior court, is waived by their appearance and answer without objection to the form of the petition, and cannot be urged upon appeal for the first time.

Id.—Accountability of Trustee—Mingling of Trust Funds—Compound Interest.—A trustee of an estate who has mingled the trust funds with funds of a partnership of which he was a member, which latter funds earned about eleven per cent per annum net, and who is guilty of gross negligence in the management of the estate, is properly chargeable with interest upon the trust funds at the rate of ten per cent per annum, compounded annually up to the time of the settlement of his accounts; but it is error for the court to make such charge continue "so long as he shall remain in office" as a trustee. It must be presumed that in future the appellant will faithfully discharge the duties of his office.

Id.—Violation of Trust—Rights of Beneficiary.—Where a trustee, in manifest violation of his trust, has applied the trust funds to his own

benefit and profit in trade, a court of equity will apply the rule of annual or semi-annual rests, if it will be most for the benefit of the *cestui que trust.* The true rule in equity in such cases is to take care that all the gain shall go to the *cestui que trust.*

ID.—ACCOUNTING—NECESSITY OF EXPENDITURE—BURDEN OF PROOF.—In the settlement of the account of the trustee of an estate, the burden of proving an expenditure to have been necessary is upon the trustee.

ID.—COMPENSATION TO TRUSTEES—GROSS NEGLIGENCE.—Compensation to trustees is allowed only to faithful stewards for their care, trouble, and responsibility in the management of the estate, and compensation is properly refused where the trustee is guilty of gross negligence in the management of the estate, and the fact that the will itself provides for compensation is immaterial.

APPEAL from a decree of the Superior Court of San Luis Obispo County, settling a trustee's account.

The facts are stated in the opinion of the court.

*Wilcoxon & Bouldin,* and *J. M. Wilcoxon,* for Appellant.

The probate division of the superior court had no jurisdiction of appellant or the subject matter of this proceeding. (*Bush* v. *Lindsey,* 44 Cal. 121; *Wetzler* v. *Fitch,* 52 Cal. 643; *Dean* v. *Superior Court,* 63 Cal. 473; *In re Allgier,* 65 Cal. 228; *In re Cahalan,* 70 Cal. 604; *In re Rose's Estate,* 80 Cal. 174; *Verdier* v. *Roach,* 96 Cal. 467, 478.) The court erred in charging Goldtree with all the fund that came to his hands, with interest at the rate of ten per cent per annum, compounded annually, from the time of the receipt of the money. (Civ. Code, secs. 1917–20, 2262; *Estate of Stott,* 52 Cal. 403.) If it was sought to charge appellant with profits made out of the trust fund, our answer is that that can only be done in a proceeding in equity. (*In re Rose,* 80 Cal. 174.)

*Myrick & Deering,* for Respondents.

The superior court, sitting in probate in the estate of Thompson, deceased, had jurisdiction to settle the account of the trustees, the trust having been created by will; that Goldtree was appointed by the court sitting in equity is immaterial. (Code Civ. Proc., sec. 1699.) The superior court, sitting in probate, may use its equity

powers in the exercise of its probate jurisdiction. (*Verdier* v. *Roach*, 96 Cal. 467, 478; *Pennie* v. *Roach*, 94 Cal. 515, 521; *Estate of Burton*, 93 Cal. 459, 464.) The court properly charged the trustee with ten per cent per annum, compounded. (Civ. Code, secs. 2229, 2236, 2237; *Gunter* v. *James*, 9 Cal. 643; *Estate of Holbert*, 39 Cal. 597, 601; *Green* v. *Clark*, 31 Cal. 591; *Estate of Hilliard*, 83 Cal. 423; 2 Pomeroy's Equity Jurisprudence, secs. 1075, 1076; *Estate of Stott*, 52 Cal. 403.) The court properly disallowed all commissions on account of the gross mismanagement of the trust by the trustees. (*Dufford* v. *Smith*, 46 N. J. Eq. 216; *Norris' Appeal*, 71 Pa. St. 106.)

*L. Lamy*, for John Thompson, Trustee.

PATERSON, J.—This is an appeal by Isaac Goldtree, one of the trustees of the estate of Jonathan Thompson, deceased, under the will, from a decree settling an account.

Thompson died in the county of San Luis Obispo, on December 5, 1875, leaving a will in which, after making certain specific bequests, he directed the residue of his estate to be distributed to three trustees, to hold and invest the same, and deliver the income thereof to four sets of beneficiaries during their lifetimes; and thereafter to deliver the estate to the children of the first-named beneficiaries. The will was duly admitted to probate; and on March 16, 1877, the estate was distributed to the trustees, and the executors were discharged. On December 22, 1884, one of the trustees named in the will was removed from his office as trustee, and the appellant, Goldtree, was appointed a trustee to fill the vacancy. Ever since said last-named date, Goldtree and John Thompson have been sole trustees of the estate, Grierson, one of the trustees named in the will, having resigned on the twenty-second day of December, 1884. The estate consisted of a large amount of real estate, lying in different counties, $11,453.84 in money, $11,015.22 in promissory notes, cattle, horses, wagons,

machinery, etc. It was arranged between Thompson and Goldtree that the latter should hold all the money collected or belonging to the trust, and manage the lots in the towns of San Luis Obispo and San José, and that Thompson should take charge of all other portions of the trust estate. On the day of his appointment, Goldtree received the $11,453.84 cash belonging to the estate, and deposited the same to the credit of the general account of Goldtree Brothers, a partnership of which he was a member, and thereafter said money was mingled with the funds of the partnership. In the years 1885 to 1886, inclusive, he received on notes belonging to the estate the sum of $2,639.60, which the court found, "together with the $11,453.84, making a total of $14,093.44, constituted a part of the *corpus* of the trust estate." This amount was reduced by payments made pursuant to orders of the court aggregating $1,742.90, leaving, the court finds, "*corpus* for which Isaac Goldtree was chargeable on October 2, 1892, the sum of $12,350.74." All of the moneys received by Goldtree were deposited in the name of his firm, and mingled with the funds thereof. No separate account was ever kept of the moneys received by him as trustee. The general account was drawn upon and used for the purposes of the business of their partnership, as well as for the trust estate, by checks signed "Goldtree Bros." The profits of the general business of Goldtree Brothers netted them on the average, for the years 1885 to 1892, inclusive, about 11 per cent per annum. The firm was engaged in various enterprises, including speculation in land, buying grain, the lending of money, and the carrying on of a banking business. In 1890 Goldtree left the state with his family for Europe, and at all times since said date has remained out of the state. During this time he has left the management of the trust to the book-keeper of his firm, and to his attorney. During the years 1884 to 1892, inclusive, various portions of the estate had been in litigation, and the appellant has paid out as necessary and proper disbursements,

including attorney's fees, of something over $13,000, and, including payments to beneficiaries, something over $14,000. The beneficiaries, becoming dissatisfied with the action of the trustees, filed a petition asking that the latter be required to account, and that they be removed from office. Thereupon appellant filed an account, showing receipts by him of trust funds, to certain items of which an objection was made, and, after a hearing, the court disallowed items aggregating $1,070.73, charged appellant with the *corpus* of the estate received by him, together with interest thereon, at the rate of 10 per cent per annum, compounded annually, and credited him with the allowed disbursements. Compensation was denied to the trustees, and appellant was directed to pay 10 per cent per annum on the trust money belonging to the trust and in his possession as long as he remained trustee, the court in its findings, however, saying, " that said Isaac Goldtree be given the privilege of resigning said trust."

The petition asking for the accounts and removal of the trustees is entitled, " In the matter of the estate of Jonathan Thompson, deceased "; and, in accordance with its prayer, there was issued from the probate division of the superior court a citation to the trustees, requiring them, at a certain time, to appear and render an account.

It is contended by the appellant that the superior court, sitting in probate in the estate of Thompson, deceased, had no jurisdiction of the matter of the settlement of the account of the trustees, and, technically speaking, this is true. The will of Thompson had been probated, the estate distributed and delivered up to the distributees. The executors had been discharged in the probate court fifteen years before this petition was filed. Goldtree's powers came through an order of the superior court in equity, but, while it is true that the probate and equity jurisdictions of the superior court are separate and distinct, that the former furnishes a method of administering the affairs of a decedent, and, when final distribution has been had, its jurisdiction is exhausted, and

it is peculiarly for a court of equity to appoint and control trustees in the management of trust estates, yet, under our system, the same tribunal exercises equity and probate jurisdiction. The appellant made no objection to the form of the petition. The court had jurisdiction of the subject matter, and the objection is raised, for the first time in this court, that the court did not have jurisdiction of the person, which, of course, was waived by the appearance of the defendant without objection. The petition under these circumstances may be regarded as a bill in equity addressed to the equitable powers of the superior court, and the form of its title is immaterial. It is not true that there were no issues, or that a burden was placed upon the appellant which would not have been upon him in a court of equity. The petitioners alleged mismanagement and failure to account or report. Pursuant to the order contained in the citation, appellant did appear and file an account of his dealings with the trust estate, and thereafter specific objections were made to certain items. The same matters were in issue that would have been in issue if the complaint had been filed in equity, and the burden of proof was no greater in the one case than it would have been in the other.

The court did not err in its statement of the account, or in charging Goldtree with interest at the rate of ten per cent per annum. The funds with which the moneys of the estate were mingled earned about eleven per cent per annum, net, and there was gross negligence in the management of the estate. "In regard to interest upon trust funds the general rule is that if a trustee has made interest upon those funds, or ought to have invested them so as to yield interest, he shall, in each case, be chargeable with the payment of interest. In some cases courts of equity will even direct annual or other rests to be made, the effect of which will be to give to the *cestui que trust* the benefit of compound interest. But such an interposition requires extraordinary circumstances to justify it. Thus, for example, if a trustee, in

manifest violation of his trust, has applied the trust funds to his own benefit and profit in trade, . . . . courts of equity will apply the rule of annual or semi-annual rests, if it will be most for the benefit of the *cestui que trust.* The true rule in equity, in such cases, is to take care that all the gain shall go to the *cestui que trust.*" (2 Story's Equity Jurisprudence, 13th ed., sec. 1277; 1 Perry on Trusts, 4th ed., sec. 471.)

We are unable to see that the court erred in disallowing the item of two hundred and fifty dollars retainer. The court evidently thought it was an unnecessary expenditure. The burden of proof was upon the appellant to show that it was a proper disbursement, and the same may be said of the other items mentioned in finding 21.

Neither did the court err in refusing to allow the trustees commissions. Compensation is allowed in cases of this kind only to faithful stewards for their care, trouble, and responsibility in the management of an estate, and it matters not that the will itself provided for compensation, which is conditioned upon a faithful performance of the trust. There are many reported cases in which the courts have refused to allow commissions, where the negligence exercised by the trustees was not so great as that shown in the case at bar. (*Dufford* v. *Smith,* 46 N. J. Eq. 216; *Norris' Appeal,* 71 Pa. St. 126.)

We think it clear, however, that the court erred in charging the appellant with interest at the rate of ten per cent per annum, compounded annually so long as he may remain a trustee. The court had the right to deprive him of commissions, and to impose upon him interest compounded annually up to the time of the settlement of the accounts, but did not have the right to impose a penalty for his future conduct of the affairs of the estate. It must be presumed that in the future the appellant will faithfully discharge the duties of his office.

The cause is remanded to the court below with directions to eliminate conclusion of law No. 10 from its de-

cison, and to modify its decree by striking from the
ninth paragraph the words "so long as he shall remain
in office," and as so modified the decree will stand
affirmed.

GAROUTTE, J., and HARRISON, J., concurred.

A petition for a hearing in Bank having been filed,
the application was denied, and the following opinions
were rendered thereon:

The COURT.—Since the decision in this case was filed
our attention has been called to the fact that the decree
charges the appellant with $14,275.21. This is evidently
a clerical mistake, because the court below decided, after
hearing the evidence, that the appellant should be
charged with $13,296.90. But after a carefnl computa-
tion we find that even the latter amount is too great.

The error arose, doubtless, out of the failure to con-
sider the fact that in all of the years except one the ex-
penses allowed exceeded the income. Starting with the
sum of $11,453.84, and computing the interest each year
at ten per cent, with allowances for the excess of ex-
penses over income, the amount for which the appel-
lant should be charged is $12,154.68.

It is ordered, therefore, that, in addition to the modi-
fication heretofore directed, the court below change the
figures of the decree to $12,154,68.

BEATTY, C. J. (dissenting).—The modification made in
the judgment of the Department in this case does not,
in my opinion, rectify all the errors of which appellant
has a right to complain, and is not, therefore, a suffi-
cient ground for denying him a rehearing. Even
allowing that he is justly chargeable with interest com-
pounded annually at the rate of ten per cent on the
funds in his hands, he is still entitled to be credited
with the payments made by him at the dates when they
were made. By the method of computation followed in
arriving at the amount of the judgment now given,

interest is calculated on the whole of each annual balance for a whole year, and from the amount of principal and interest all the payments made during the year are aggregated, and deducted as if they had all been made on the last day instead of having been made, as the record shows they were, from time to time during the year. This error is partially compensated, it is true, by treating his receipts in the same way, but since his payments were largely in excess of his receipts, the erroneous method of computation necessarily works to his disadvantage.

This, however, is a trifling matter compared to the error—as I deem it to be—of allowing interest at the rate of ten per cent, instead of the legal rate of seven per cent. I know of no authority for allowing interest, *as such*, at any greater than the legal rate. It is, of course, permissible in a proper case under pleadings properly framed to allow actual profits realized by a trustee upon trust funds, and there is, perhaps, no objection to computing or measuring such profits by compounding interest at any given rate. But this is no such case, certainly not on the pleadings, and, in my opinion, not even on the findings.

The form of proceeding by petition to the probate court was, confessedly, a mistake, but by what I cannot help regarding as too great a concession on the part of this court, the petition so filed, and the exceptions to the account filed by appellant, are treated as the equivalent of a bill in equity by a *cestui que trust*, against a delinquent trustee, and it is assumed that they, together with the account filed by appellant, made issues, and, amongst others, an issue as to actual profits derived by the appellant from the trust fund. In my opinion no such issue was made on the most liberal construction that can be given to the petition and exceptions, and, therefore, the superior court had no right to try it or to decree actual profits. It is also a serious objection to the judgment that the proper parties to a suit in equity were not before the court, and, on the evidence, it does

not seem to me that the appellant has been guilty of such misconduct as to call for the infliction of a penalty, or to entitle the petitioners to recover anything more than the fund received by the appellant, with legal interest compounded.

For these reasons I dissent from the order denying a rehearing.