(March 28, 1919.)

ANNIE WEASKUS LUKE, Appellant and Cross-respondent,
v. WILLIAM F. KETTENBACH, Respondent and
Cross-appellant.

[181 Pac. 705.]

GUARDIAN AND WARD—PRACTICE IN PROBATE COURTS—SETTLEMENT OF
GUARDIAN'S INTERMEDIATE ACCOUNTS—CONCLUSIVENESS OF—MIN-
GLING OF FUNDS—ATTORNEY'S FEES—COMPENSATION OF GUARDIAN.

1. C. L., sec. 4229, providing for the setting aside of judgments
or decrees on account of mistake, inadvertence or excusable neglect,
applies to probate practice.

2. The settlement and allowance of the annual or intermediate
account of a guardian by the probate court is only *prima facie* evi-
dence of its correctness, and is not conclusive against the ward so
as to prevent re-examination by the probate court on the final ac-
counting of the guardian of his entire management of the ward's
estate. C. L., sec. 5602, as to the conclusiveness of settlements of
administrators' accounts, is not made applicable to guardians' ac-
counts by C. L., sec. 5809.

3. Where a guardian mingles his ward's funds with his own, and
it is not shown that he received any profit from the use of the ward's
funds, the guardian should be charged with interest at the legal rate,
with annual rests, on the amount of the funds of the ward so mingled
with his own.

4. A guardian is entitled to credit for an attorney's fee paid by
him for services rendered to the estate, when he shows necessity for
such service, and that the amount so paid was reasonable.

5. A guardian is not entitled to recover attorney's fees incurred
in resisting an attack upon his final account, which attack was in-
vited by his own neglect and misconduct.

6. Compensation of a guardian for his services, under C. L., sec.
5796, is not to be computed on the basis of fees and commissions,
but is to be fixed in such amount as the court settling his accounts
deems just and reasonable.

[As to use of ward to property, see note in 89 **Am. St.** 304.]

APPEAL from the District Court of the Tenth, formerly
Second Judicial District, for Nez Perce County. Hon.
Edgar C. Steele, Judge.

Settlement of a guardian's final account on appeal from order of probate court. From the judgment entered in the district court, both parties appeal. *Reversed and remanded.*

Eugene and Lawrence E. O'Neill, for Appellant.

The probate court has jurisdiction to appoint a general guardian and to direct and control his conduct. After having made such appointment the court retains jurisdiction for all purposes in connection therewith until his accounts are rendered and he is legally discharged. The probate court may consider all the prior accounts filed on the consideration of a final account of a guardian. (*Guardianship of Cardwell*, 55 Cal. 137.)

If the guardian invests or deposits funds of the estate in his individual name and without designating his official capacity, thereby unnecessarily and wilfully mingling the trust property with his own, he becomes liable for its safety in all events. (Ross, Probate Law and Practice, sec. 675.)

The guardian must be held to pay interest under the rule holding him to strict accountability at the legal rate of 7 per cent compounded annually during the time the money was used by him or mingled with his own funds. (*Guardianship of Cardwell*, 55 Cal. 137; *Taylor v. Hill*, 87 Wis. 669, 58 N. W. 1055; *Noble's Estate*, 178 Pa. St. 460, 35 Atl. 859; 21 Cyc. 93.) He must be charged with interest if he fails within a reasonable time to invest his ward's funds. (*Jacobia v. Terry*, 92 Mich. 275, 52 N. W. 629; *In re Guardianship of Thurston* (*Mather's Guardian v. Heath*), 57 Wis. 104, 15 N. W. 126; *In re Sanderson*, 74 Cal. 199, 215, 15 Pac. 753.)

Directions for investments or orders of the court to invest to save the guardian from responsibility must be obtained before the investment is made. (*Nagle v. Robins*, 9 Wyo. 211, 62 Pac. 154, 796.) The guardian has charged fees in his final accounts under the statute for compensation of executors. (Sec. 5586, Rev. Codes.) This is error. Sec. 5796 provides that he is to be allowed the amount of his reasonable expenses incurred in the execution of his trust and he must

also have such compensation for his services as the court in which his accounts are settled deems just and reasonable. This section controls as to guardians. (Ross, Probate Law, p. 999; *Estates of Boyes,* 151 Cal. 143, 90 Pac. 454.)

The allowance by the court to the guardian pays for all services except attorney's fees in lawsuits. (*Douglass v. Folsom,* 21 Nev. 441, 447, 33 Pac. 660.) A claim for fees by guardian for an attorney is like claims for additional compensation to an executor. When a claim is made therefor it should be scrutinized with care, and never allowed unless the court be satisfied that it is just and reasonable and the services for which it is made should be stated and particularly set forth. (*Steel v. Holladay,* 20 Or. 462, 469, 26 Pac. 562, 563; *May v. Green,* 75 Ala. 162, 167; 2 Woerner on Am. Law of Administration, sec. 529; *Miller's Exr. v. Simpson,* 8 Ky. Law Rep. 518, 2 S. W. 171.)

The court controls the guardian until his accounts are settled. (*Estate of Curtis,* 121 Cal. 468, 53 Pac. 936; *In re Allegier,* 65 Cal. 228, 3 Pac. 849; Woerner on American Law of Guardianship, secs. 94, 101; *State v. Roeper,* 9 Mo. App. 21; *State to Use of Koch v. Roeper,* 82 Mo. 57.)

Geo. W. Tannahill and S. O. Tannahill, for Respondent.

Under the provisions of sec. 5602, Rev. Codes, the settlement of an account and the allowance thereof by the court, or upon appeal, is conclusive. (*In re Coryell's Estate,* 16 Ida. 201, 101 Pac. 723, 727; *Chandler v. Probate Court,* 26 Ida. 173, 141 Pac. 635.)

The probate court has no authority to review all the orders and decrees theretofore made, not only those made by himself, but his predecessors as well. (*In re Wells' Estate and Guardianship,* 140 Cal. 349, 73 Pac. 1065; *King v. Chase,* 159 Cal. 420, 115 Pac. 207; Church's Probate Law, p. 208; *Brodrib v. Brodrib,* 56 Cal. 563, 564; *Veysey v. Veysey,* 86 Wash. 553, 151 Pac. 39.)

The court is without authority to re-examine and revise the accounts previously made and settled. (*Faxon v. All Per-*

*sons,* 166 Cal. 707, 137 Pac. 919, 921, L. R. A. 1916B, 1209; *Title Guaranty & Surety Co. v. Slinker,* 35 Okl. 128, 128 Pac. 696.)

"Guardians are not liable beyond what they receive, unless in case of gross neglect." (*In re Clark's Estate,* 39 Pa. Supr. Ct. 445.)

The guardian has a reasonable time within which to invest the funds, and six months is not an unreasonable time. (*Anderson v. Silcox,* 82 S. C. 109, 63 S. E. 128.)

"The matter of making allowances to guardians of incompetents for services rendered must be left to the discretion of the court." (*In re Estate of Averill,* 6 Cal. Unrep. 774, 66 Pac. 14.)

"A guardian is not chargeable with interest for money in his hands unless he has consented to take the money at interest, or unless it has been loaned out at interest under the direction of the court." (*Hendricks v. Huddleston,* 5 Smedes & M. (13 Miss.) 422; *Reynolds v. Walker,* 29 Miss. 250; *Austin v. Lamar,* 23 Miss. 189.)

RICE, J.—On Sept. 12, 1906, William F. Kettenbach was appointed by the probate court of Nez Perce county guardian of the estate of George Weaskus, a blind and incompetent Indian. On Feb. 26, 1909, he filed his first report, showing that he had received funds of his ward in the sum of $6,944.44, but not showing when the money was received. This report was verified by his oath on Sept. 25, 1908. Deducting certain payments made by the guardian, and $367.20 fees and commissions claimed by him, this report showed a balance on hand of $3,311.82. The probate court approved this report, March 8, 1909.

The next report was filed by the guardian on Feb. 2, 1910. It consisted of this simple statement: "No change in amount on hand since last rendered account. Balance due, $3,311.82."

Annie Luke Bill, as sister and next friend of the ward, filed objections to this report, stating among her grounds of

objection that "his said account filed on the second day of February, 1910, as and for his annual account of his dealings with the estate of the said incompetent, makes no showing as to the form in which the moneys heretofore received are held, in what property the same is invested or what rate of interest the same is now drawing, or what interest it has earned during the time the same has been in the hands of said guardian."

The probate court thereupon disallowed this account, and ordered the guardian to render a more complete account on or before Feb. 28, 1910. However, no further report was made until July 9, 1914, when he filed a report, showing $3,311.82 on hand Feb. 2, 1910, and interest collected amounting to $473.49. This report did not show the dates between which interest had been collected. The guardian stated in this report that the ward's money was then on deposit with the Idaho Trust Company, on a time certificate of deposit, dated Feb. 19, 1914, and bearing interest at 4% per annum, on which six months' interest would be due Aug. 19, 1914.

In this report credit was claimed for attorney's fees in the sum of $50.00. The report was approved by the probate court, July 22, 1914, and after allowing the credits claimed showed a balance in the guardian's hands, July 9, 1914, of $3,735.31.

On Sept. 5, 1914, the ward died, leaving a will by which he appointed his sister, Annie Weaskus Luke, executrix. The validity of the will was attacked by his son Phillip, who, having lost the contest before the probate court, appealed to the district court for Nez Perce county. During the pendency of the appeal in the district court, the guardian, on Jan. 25, 1915, filed his final account. In this account he charged himself with balance on hand, July 30, 1914, $3,735.31, and with interest amounting to $139.64 to January 30, 1915, making a total of $3,874.95. He asked credit for $50 additional attorney's fees, $211.12 additional fees and commissions for himself, and $13.83 probate court costs, which would leave a balance in his hands, after deducting these amounts, of $3,600.00.

Although the will contest was still undecided, the guardian prayed the court to distribute this estate to "Annie Luke, administrator of the estate of George Weaskus, deceased," which account was allowed, approved and settled Feb. 6, 1915.

On July 8, 1915, Annie Weaskus Luke filed with the probate court her motion to vacate and set aside the order of Feb. 6, 1915, by which the final account of the guardian had been allowed, upon the ground of mistake, inadvertence and excusable neglect. (C. L., sec. 4229.) The guardian resisted this motion, but on Sept. 14, 1915, the probate court entered an order vacating and setting aside the order of Feb. 6, 1915. The court further ordered the guardian to render a more complete account of his transactions with the property of said estate.

In compliance with this last order, the guardian, on Sept. 24, 1915, filed another final account, showing the following items charged to himself: Balance on hand July 22, 1914, $3,735.31; interest on $3,735.31, July 22, 1914, to January 30, 1915, at 4% per annum, $139.62; interest on $3,600.00 from January 30, 1915, to Sept. 23, 1915, at 4% per annum, $93.20; making a total of $3,968.13. He asked that he be credited with the following items: Attorney's fees, $50; fees of guardian, 7% on $1,000, 5% on $2,968.13, $218.40; probate court costs, $13.83; additional attorney's fees to be allowed by the court, $250; probate court costs in closing up the estate, $——.

The executrix duly objected to this account for the reasons, among others, that the interest earned was much less than should have been earned; that there was no showing of necessity for the employment of an attorney by the guardian; that the probate fees claimed were excessive, and that the guardian was claiming double commissions for himself. After a hearing, the probate court disallowed this final account of the guardian, and adjudged him indebted to the estate in the sum of $4,533.53. From this judgment, the guardian appealed to the district court for Nez Perce county.

On trial of the matter anew in the district court, judgment was rendered for the executrix in the sum of $3,797.79, and from that judgment both parties have appealed to this court.

The final account disclosed for the first time that the funds of the ward were not invested in any interest bearing securities until Nov. 1, 1910. It was admitted by the guardian on the hearing that from the time he received the funds until the last-mentioned date they were on deposit in his own name and mingled with his own funds.

It is contended that the probate court was without power to set aside the decree settling the first final account of the guardian, and that the district court erred in upholding the action of the probate court in setting aside the said decree.

This contention cannot be sustained. C. L., sec. 4229, has been held by this court to apply to probate practice. (*Estate of Blackinton*, 29 Ida. 310, 158 Pac. 492; *Chandler v. Probate Court*, 26 Ida. 173, 141 Pac. 635.) The application was addressed to the sound discretion of the probate court, and its action should be sustained in the absence of an abuse of discretion. It is sufficient to state that the record does not disclose that the probate court abused its discretion in setting aside the order settling the first final account. Therefore, the action of the district court in upholding the action of the probate court is approved.

It is also contended that the allowance, approval and settlement of the annual, or intermediate, accounts of the guardian by the probate court is final and conclusive against the ward to the extent that items passed upon cannot be re-examined by the probate court on the final accounting of the guardian.

The supreme court of California, in the case of *Guardianship of Cardwell*, 55 Cal. 137, in construing statutes practically the same as our own, held that the settlement of a guardian's annual or intermediate account is only *prima facie* evidence of its correctness, and that the statutes relative to the conclusiveness of an administrator's accounts have no application to the annual or intermediate accounts of a guardian.

The case of *Well's Estate and Guardianship*, 140 Cal. 349, 73 Pac. 1065, is cited as authority to the contrary. In that case, however, the court construed the action to be one in equity to set aside the final account of the guardian, as well as the intermediate account, upon the ground of fraud, and it was decided that the demurrer to the complaint should have been sustained for failure to allege specifically the fraud complained of. The court also held that the judgment-roll would not sustain the judgment, in that while the trial court failed to find that fraud had been committed, and therefore failed to show justification for setting aside the accounts of the guardian, nevertheless the court proceeded to re-examine his accounts. The Wells case is not in point.

In the case of *Brodrib v. Brodrib*, 56 Cal. 563, the question of the conclusiveness, not of an intermediate, but of the final account of a guardian was involved, and it was sought to attack it not in the guardianship proceeding, but by way of answer and cross-complaint in a suit wherein recovery was sought against the guardian by reason of disclosures made in his final account, the effect of which he sought to avoid upon the theory that when he rendered the account he was in such a condition, physically and mentally, as rendered him legally incompetent, and that items of his said final account were not true.

We do not think that the other cases cited in the Wells case are authority for the statement that an order settling the guardian's intermediate account is conclusive against the ward to such an extent as to prevent a re-examination of the guardian's management of his ward's estate upon the final accounting of the guardian. The Cardwell case, we think, announces the correct doctrine. Until the final accounting is due, the ward is always incompetent and unable to protect his own interests. A settlement of the intermediate accounts of the guardian should not be held to be conclusive unless explicitly so made by statute.

With reference to the amount which should be charged against the guardian, it is not shown in the record that he

made any profit for himself out of the ward's funds while they were mingled with his own. The rule applicable to this case is stated in the cases of *Estate of Eschrich*, 85 Cal. 98, 24 Pac. 634; *Estate of Stott*, 52 Cal. 403; *Estate of Clark*, 53 Cal. 355; *In re Cousins' Estate*, 111 Cal. 441, 44 Pac. 182; *Glassell v. Glassell*, 147 Cal. 510, 82 Pac. 42; *In re Dow*, 133 Cal. 446, 65 Pac. 890; *In re Noble's Estate*, 178 Pa. St. 460, 35 Atl. 859; *Hughes v. People*, 111 Ill. 457; *Bradford's Minor Heirs v. Bodfish*, 39 Iowa, 681; *In re Lux's Estate*, 100 Cal. 606, 35 Pac. 345. The guardian should be charged with interest at the legal rate of 7% per annum, with annual rests, for the use of the funds during the period they were mingled with his own, i. e., from Sept. 25, 1908, to Nov. 1, 1910. The reason for the rule is stated in *In re Cousins' Estate, supra,* and in *In re Lux, supra.*

The final account disclosed, for the first time, that on Nov. 1, 1910, the guardian invested $3,315.04 of the ward's funds in interest bearing certificates of deposit, maturing semi-annually. He does not show that he expended any substantial portion of the funds for the benefit of the ward. It was his duty, therefore, upon the maturity of each certificate, to add the interest to the principal, and take a new certificate for the whole amount. He states in his evidence that he did so. He is therefore liable to the estate for interest at the rate of 4% per annum, with semi-annual rests, from the first. day of November, 1910, on the amount of money which he invested at that time.

There was left in the guardian's possession, the difference between the amount of money with which he should have credited the estate on Nov. 1, 1910, and the amount which he actually invested in the certificate of deposit. This amount not being accounted for in any way, under the circumstances disclosed by the record, must be presumed to have remained mingled with his own funds. This amount, upon computation, is found to be $503.24, on which he should be required to pay interest at the rate of 7% per annum, with annual rests.

The decree of the district court in this case was entered March 1, 1917. The amounts with which the ward's estate

should have been credited, based upon the rules above stated,
are as follows:

Sept. 25, 1908........................$3,311.82
Interest on above at 7%, compounded
   annually, from Sept. 25, 1908, to Nov. 1,
   1910 ...............................    506.46
Interest on $3,315.04 at 4%, compounded
   semi-anually, from Nov. 1, 1910, to
   March 1, 1917.......................    945.20
Interest on $503.24 at 7%, compounded
   annually, from Nov. 1, 1910, to March 1,
   1917 ...............................    269.55

                    Total........$5,033.03

The record amply justifies the allowance of the two items
of $50 each for attorney's fees as reported by the guardian
in his intermediate and final accounts. Attorney's fees are
recognized as proper items of expense when the services of
attorneys are reasonably required. The burden is upon the
guardian to show the necessity for the employment of an
attorney, and the reasonableness of the fees paid him, and the
allowance should never exceed the amount actually paid.
(*In re Thompson's Estate*, 101 Cal. 349, 35 Pac. 991, 36 Pac.
98, 508; *In re Adams' Estate*, 131 Cal. 415, 63 Pac. 838;
*Nagle v. Robins*, 9 Wyo. 211, 62 Pac. 154, 796; Woerner on
Guardianship, p. 351.)

The item of $250 for attorney's fees, claimed in the final
account, should be disallowed. The services of the attorney
for which this allowance was asked were rendered in resist-
ing the attack upon the final account itself. This attack was
invited by the character of the account filed, since it showed
both neglect and misconduct on the part of the guardian.
Under such circumstances the guardian is not entitled to
credit for attorney's fees paid by him. (Woerner on Guard-
ianship, p. 351.)

The compensation which the guardian asked for himself
was computed upon the basis of fees and commissions allowed
to administrators or executors of the estates of deceased

persons. C. L., sec. 5796, provides that "Every guardian must be allowed the amount of his reasonable expenses incurred in the execution of his trust, and he must also have such compensation for his services as the court in which his accounts are settled deems just and reasonable." The compensation of the guardian under the section quoted is not to be determined on the basis of fees and commissions, but is to be in such amount as the court deems just and reasonable. We are of the opinion that there is no evidence in the record to justify the allowance of any compensation to the guardian for services in addition to the $367.20 which he had received at the time of filing his first account.

The guardian should be credited with the court costs, amounting to $28.68, and with attorney's fees in the sum of $100, and judgment should be rendered against him for the sum of $4,904.35.

The judgment of the district court is reversed, and the cause remanded with instructions to enter judgment as of date of March 1, 1917, against the guardian for the sum of $4,904.35. Costs awarded to appellant and cross-respondent.

Morgan, C. J., concurs.

DUNN, District Judge, Concurring in Part and Dissenting in Part.—While I concur in the view that the amount of the judgment of the district court against the guardian should be increased, I cannot agree with the conclusion of the majority of the court as to allowances to the guardian for attorney's fees and for his personal services.

As to attorney's fees, it seems to me the majority opinion ignores the very wholesome rule there stated that the burden is on the guardian to show the necessity for the employment of an attorney. In this case no suit was brought and none was threatened that would have involved the guardian. Most of the so-called services of the attorney consisted of advice to the guardian about matters with which he had nothing to do and about possible lawsuits to which, if they had been brought, the guardian would not have been a party. The

appearance of the attorney for the guardian in the probate and district courts was rendered necessary by the negligence of the guardian, and under the rule announced cannot, I think, be properly charged against the estate. In my judgment there is a total lack of necessity shown for the employment of an attorney.

As to the allowance of $367.20 to the guardian for his services, I am not in accord with the majority, for the reason that the guardian's course throughout the entire period of his guardianship, beginning in 1906, has been one of gross negligence and unfaithfulness. A re-reading of the record confirms me in this view, which is based almost wholly on the reports and testimony of the guardian himself. The estate of the ward in this case consisted entirely of money paid into the hands of the guardian, which required him to keep accurate accounts of the money received; the amount earned by him therewith and the expenditures made by him. He admits receiving $3,311.82 belonging to the ward, but, though he was asked to give the date upon which he received this sum, we search his testimony and his reports in vain for the exact date. This court has been able to fix a definite date for the beginning of his responsibility only by taking the date upon which he verified his first report, Sept. 25, 1908. While this is accepted as the earliest date that can be definitely fixed for charging him with these funds, there is evidence in the record strongly tending to show that on the date above mentioned he had been in possession of the funds for more than a year. He made no attempt to obtain interest for his ward until compelled to do so after complaint had been made by the ward's sister, and then he was content to accept the low rate of 4 per cent, with no pretense that at any time he made the slightest effort to get more. Possibly this was the best that could be done safely, but if so it is somewhat singular that the guardian nowhere claims that it was. In the district court he testified that he was carrying the funds in a certificate of deposit which he renewed every six months for the amount of the old certificate and interest for the preceding six months, but when he rendered his account to the probate court he charged

himself with only simple interest.   It is not necessary, how-
ever, to rely solely upon these matters in determining the
degree of fidelity shown by the guardian in the execution of
this trust, which the courts universally hold to be of the
highest and most sacred character.   His interest in and atten-
tion to his duties are clearly indicated by his answer when
questioned as to his employment of an attorney: "I had given
a good-sized bond in this matter, and I wasn't giving it any
special attention—it was more perfunctorily, my handling of
it—and I wanted the advice of an attorney to keep me
straight."   And further, when he said in reply to a question
of his attorney as to what he meant when he said he thought
this was to be a temporary affair:

"Why, I expected that at any time I might receive a court
order to distribute the money; I was appointed at the instiga-
tion of someone interested in the heirs, I don't know who;
I think it was Thompson, of Pendleton; it was merely per-
functory with me; I gave the bond and took the appointment,
and if I am allowed to say so, at that time I had matters that
were of moment and weight to me, considerably more than
was this along about those dates, and I didn't do anything
more in this matter than I was naturally called upon to do, or
give it much thought.   It seemed to be running along all
right, and I was given to understand from Mr. Smith this
would be temporary, and I let it run along that way."

When we contrast the spirit and conduct of the guardian
as expressed above with the spirit and conduct enjoined by
the law in requiring the guardian "to dispose of and manage
the estate according to law and for the best interest of the
ward, and faithfully to discharge his trust in relation
thereto," it seems to me there is no escape from the conclu-
sion that the guardian has been guilty of gross negligence and
unfaithfulness to his trust.   So believing, I think the court
should disallow all his claims for compensation for himself
and for attorney's fees and add to the sum of $4,904.35 the
sum of $100 allowed as attorney's fees and the sum of $367.20
allowed the guardian for his services, with interest on said

last-named amount at 7 per cent, compounded annually, from Sept. 25, 1908, to March 1, 1917, and direct the district court to enter judgment as of March 1, 1917, against the guardian for the aggregate of these sums.