(No. 6216. February 20, 1936.)

MARY SHORT, Respondent, v. ADA SHORT THOMPSON, Otherwise Known as ADA SHORT, Defendant, and AMERICAN SURETY COMPANY OF NEW YORK, a Corporation, Appellant.

[55 Pac. (2d) 163.]

Richards & Haga, for Appellant.

364

Luther W. Tennyson, for Respondent.

AILSHIE, J.—On May 7, 1924, Ada Short was appointed guardian of her minor daughter, Mary Short, and served as such guardian until September 20, 1933; Mary became of age in May of that year. Mrs. Short was required to give a bond in the amount of $7,500 and the same was executed by the guardian as principal and A. E. Boyd and O. F. Short as sureties. By a judgment obtained for the accidental death of her father, Mary received $7,772.28 and this amount was deposited by her guardian in a savings account in the Pacific National Bank. On January 16, 1929, Ada Short Thompson withdrew the funds from the bank (which at that time amounted to $8,917.78) and deposited same in the Boise City National Bank in a savings account. In lieu of the former bond she gave a new bond in the amount of $8,000, executed with the American Surety Company. On August 1, 1932, the latter bank went into the hands of a receiver; at that time the entire amount of principal and interest, at 4 per cent, in the savings account, amounted to $10,244.52.

On May 11, 1933, the first dividend amounting to $1,707.42 was obtained by the guardian and given to Mary. September 7, 1933, final report and accounting of the guardian was filed in the probate court and due notice of hearing thereon was given. On September 20th following, a hearing in the probate court was had on the report and account and a decree was entered, directing the guardian to pay over to the ward the sum of $8,537.10. For convenient reference the guardian's report is set out in full in footnote 1 and the

---

[1] "Guardian's Final Account.

Ada Short, formerly Ada Short Thompson, guardian of the person and estate of Mary Short, a minor, renders to the court her final account and report, and presents therewith her petition for discharge as follows, to wit:

Said guardian is chargeable as follows:

That on January 16th, 1929, said guardian deposited in the savings account of the Boise City National Bank of Boise, Idaho, the sum of Eight Thousand Nine Hundred Seventeen Dollars and Seventy-eight Cents ($8,917.78) of the moneys belonging to said estate to draw interest at the rate of 4% per annum, the interest to be paid

decree of the probate court approving the report and settling the account as note 2.

semi-annually on the 1st day of April and the 1st day of October of each year. That on August 1st, 1932, the said Boise City National Bank closed its doors and ceased to do business and the affairs of said bank were placed in the hands of a receiver; and that at the said time the said bank ceased to do business, as aforesaid, the principal and accumulated interest on said savings account amounted to the sum of Ten Thousand Two Hundred Forty-four Dollars and Fifty-two Cents ($10,244.52). That on May 11th, 1933, the receiver of said bank paid to said guardian a dividend on said savings account in the sum of One Thousand Seven Hundred Seven Dollars and Forty-two Cents ($1,707.42), leaving a balance in the sum of Eight Thousand and Five Hundred Thirty-seven Dollars and Ten Cents ($8,537.10) due and owing by the said bank to the said guardian on the said savings account, and that said guardian does not know how much of said balance, if any, will ever be paid by said bank. That the above and foregoing is all of the money and property belonging to the said estate.

That no disbursements have been made by the said guardian since December 20th, 1932, the date of the last report.

That said guardian was duly appointed on the 7th day of May, A. D. 1924, by the Probate Court of the County of Ada, State of Idaho, as the general guardian of the person and estate of Mary Short, a minor, she having no guardian legally appointed by will or deed, and who is and was an inhabitant of the said County of Ada, State of Idaho; and that at all times since said date the said Ada Short has been, and now is, the duly qualified and acting guardian of the person and estate of the said minor.

That said Mary Short became eighteen years of age on the 28th day of May, A. D. 1933; and that said estate is now in a condition to be closed and settled and the property remaining in the hands of the said guardian turned over to the said ward.

WHEREFORE, Said guardian asks that said account be approved, allowed and settled; that the administration of said estate may be brought to a close; that after due notice given and proceedings had, the estate remaining in the hands of your petitioner may be delivered to the said ward, and that she may be discharged from her trust as such guardian, and that such other and further order may be made as is meet in the premises."

2 "Decree.

Ada Short, guardian of the person and estate of Mary Short, a minor, having on the 7th day of September, A. D. 1933, rendered and filed herein a full account and report of her administration of said

On January 3, 1934, complaint was filed in the district court, praying for judgment against defendants, the guardian and surety company, in the sum of $8,000, together with interest at 6 per cent from September 20, 1933, and for costs of suit, etc. On September 10th following the case was set for trial; jury was waived and the case was heard before the judge. Defendant Thompson (the former Ada Short, guardian) failed to answer the complaint and her default was entered. The surety defended and the trial resulted in a judgment for the ward, Mary Short, against the guardian and surety company for $8,000, together with interest from September 20, 1933. The trial court agreed with the holding of the probate court as to the liability of the guardian for depositing the fund in the bank in what was termed an investment, and also held that the judgment of the probate

estate, which account was for final settlement, and having with said account filed a petition for final discharge;

And said account and petition this day coming on regularly to be heard, the said hearing having been duly continued from September 19th, A. D. 1933, by order of the court duly made and entered herein, and proof having been made to the satisfaction of the court that the clerk had given notice of the settlement of said account and the hearing of said petition, in the manner and for the time heretofore ordered and directed by the court;

And it appearing that said account is in all respects true and correct, and no person appearing to except to or contest said account or petition, the court, after hearing the evidence, and being satisfied that all debts, expenses, and charges of administration have been fully paid and discharged, and that said estate is in condition to be closed;

And it appearing that on January 16th, A. D. 1929, said guardian deposited in the savings account of the Boise City National Bank of Boise, Idaho, the sum of Eight Thousand Nine Hundred Seventeen Dollars and Seventy-eight Cents ($8,917.78) of the money belonging to said ward which had come into her hands as such guardian to draw interest at the rate of 4% per annum; and it further appearing that said guardian deposited said money in the savings account of said bank as an investment, with the intention of leaving the same in said bank until said ward arrived at the age of her majority; and it appearing that said guardian deposited said money in the savings account of said bank, as aforesaid, without requesting or receiving any leave or authority so to do from the said Probate Court; and it further appearing that on August 1st, A. D. 1932, the said

court had become final and conclusive against the guardian and the surety, as to the amount due on the accounting from the guardian to the ward. October 23, 1934, in accordance with the surety company's written request, the district court entered its decree, to the effect that plaintiff be required to accept the second dividend from the receiver, in the amount of $1,707.42, and that the amount be credited on the judgment. The surety company has appealed from the judgment.

We will first consider appellant's third assignment of error for the reason that if it is well taken and be sustained, such holding will obviate consideration of any of the other assignments. The third assignment is as follows:

"That the Court erred in making Conclusion of Law No. III, wherein the court found and decided:

bank closed its doors and ceased to do business, and that thereupon the affairs of the said bank were placed in the hands of a receiver; and it appearing that at the time said bank closed its doors and ceased to do business as aforesaid, the principal and accumulated interest on said savings account amounted to the sum of Ten Thousand Two Hundred Forty-four Dollars and Fifty-two Cents ($10,244.52) ; and it further appearing that on May 11th, 1933, the receiver of said bank paid to the said guardian a dividend on said savings account in the sum of One Thousand Seven Hundred Seven Dollars and Forty-two Cents ($1,707.42), leaving a balance in the sum of Eight Thousand Five Hundred Thirty-seven Dollars and Ten Cents ($8,537.10) yet due and unpaid by the said bank to the said guardian on the said savings account; and it appearing that the said guardian has paid over to the said Mary Short the said sum of One Thousand Seven Hundred Seven Dollars and Forty-two Cents ($1,707.42) so received by the said guardian from the said receiver, as aforesaid, as shown by the receipt signed by said ward hereto attached;

Now, Therefore, it is hereby ordered, adjudged, and decreed, that the said final account of the said guardian, Ada Short, be, and the same is hereby, settled, allowed, and approved, and a balance in favor of the said ward in the sum of Eight Thousand Five Hundred Thirty-seven Dollars and Ten Cents ($8,537.10) is hereby found and adjudged to be due and owing said ward from said guardian, Ada Short, and the said guardian is hereby ordered and directed to pay to the said ward the said sum of Eight Thousand Five Hundred Thirty-seven Dollars and Ten Cents ($8,537.10); and the said guardianship is hereby terminated and the said guardian is hereby discharged from further administration of said estate."

" 'The decree of the Probate Court of Ada County, Idaho, made and entered on September 20, 1933, settling the final account of the guardian, Ada Short, and finding a balance in the sum of Eight Thousand Five Hundred Thirty-seven Dollars and Ten Cents ($8,537.10) due and owing by the said guardian to the said ward, and decreeing and ordering the said guardian to pay the same balance to the said ward, is binding and conclusive on the said guardian, Ada Short, and on her surety, the defendant, American Surety Company of New York, a corporation.'

for the reason that the surety was not a party to the proceedings in the Probate Court, had no notice thereof, and was not bound thereby, and the order of the Probate Court with reference to the matter was obtained by collusion between the guardian and the ward to throw the loss upon the surety, and such order was contrary to law and did not operate to fasten such liability on the surety; that if the decree of the Probate Court and the statutes with reference thereto are construed and held to operate as set forth in said Conclusion No. III, the American Surety Company of New York would be deprived of its property without due process of law, contrary to the provisions of the Fourteenth Amendment to the Constitution of the United States, and it hereby claims its constitutional rights, privileges and prerogatives under said amendment."

 The probate court is a constitutional court vested with *exclusive original* jurisdiction "in all matters of probate, settlement of estates of deceased persons, and appointment of guardians." (Sec. 21, art. V, Const.; *Estate of McVay*, 14 Ida. 64, 67, 93 Pac. 31; *Idaho Trust Co. v. Miller*, 16 Ida. 308, 311, 102 Pac. 360; *Fraser v. Davis*, 29 Ida. 70, 77, 156 Pac. 913, 158 Pac. 233; *In re Hinkle*, 33 Ida. 605, 610, 196 Pac. 1035; *Maloney v. Zipf*, 41 Ida. 30, 33, 237 Pac. 632; *Larsen v. Larsen*, 44 Ida. 211, 216, 256 Pac. 369.)

"'A court of general jurisdiction is one whose judgment is *conclusive*, until modified or reversed on direct attack, and which court is competent to decide on its own jurisdiction, and exercise it to a final judgment, without setting forth the

evidence. The record, of such a court is absolute verity. The probate court of this state, as far as its jurisdiction in regard to probate and guardian matters is concerned, is such a court." (*Clark v. Rossier,* 10 Ida. 348, 358, 78 Pac. 358, 3 Ann. Cas. 231.)

Its order settling final account of an executor, administrator or guardian is a judgment *in rem,* final and conclusive against all the world after the time for appeal has expired. (*Connolly v. Probate Court,* 25 Ida. 35, 136 Pac. 205; *Walker B. & T. Co. v. Steely,* 54 Ida. 591, 605, 34 Pac. (2d) 56.)

In *Knowles v. Kasiska,* 46 Ida. 379, 384, 268 Pac. 3, this court, citing previous decisions, said:

"Probate courts, under sec. 21, art. 5, of the constitution, are made courts of record, and have original jurisdiction in all matters of probate, and their judgments cannot be collaterally attacked. (*Clark v. Rossier,* 10 Ida. 348, 78 Pac. 358, 3 Ann. Cas. 231; *Connolly v. Probate Court,* 25 Ida. 35, 136 Pac. 205; *Jorgensen v. McAllister,* 34 Ida. 182, 202 Pac. 1059; *Daniels v. Isham,* 40 Ida. 614, 235 Pac. 902.) And in probate matters, the same verity attaches to the judgments, record and proceedings of the probate court, as attached to the same matters in other courts of record. (*In re Brady,* 10 Ida. 366, 79 Pac. 75; *Clark v. Rossier, supra; Fraser v. Davis,* 29 Ida. 70, 156 Pac. 913, 158 Pac. 233.)"

See, also, *McGavin v. San Francisco etc. Society,* 34 Cal. App. 168, 167 Pac. 182; *Davis v. Seavey,* 95 Wash. 57, 163 Pac. 35, Ann. Cas. 1918D, 314; *Krohn v. Hirsch,* 81 Wash. 222, 142 Pac. 647.

It is strenuously urged that no issue was tendered in the probate court over the question as to whether the guardian had a right to make the deposit in, or loan to, the Boise City National Bank without first procuring an order therefor from the probate court; and that therefore the probate court was without jurisdiction to enter judgment against the guardian for the amount so deposited, where no objections to the final report were filed. Cases decided by this court support such a contention where the judgments involved were entered in adversary proceedings, which had to be presented by plead-

ings in a court of general jurisdiction at law and in equity. (*Miller v. Prout*, 33 Ida. 709, 197 Pac. 1023; *Gile v. Wood*, 32 Ida. 752, 188 Pac. 36; also *Wash. etc. Land & Dev. Co. v. Weiser National Bank*, 26 Ida. 717, 146 Pac. 116.)

■ The rule thus invoked, however, is not applicable to all orders and judgments entered by the court of probate, which is not a court of "law or equity" within the meaning of our constitution. When we consider the purpose and nature of this kind of report and account and the statutes authorizing and governing the same, it becomes apparent that such rule could not apply to a final account and thereby defeat what might in many cases be the most salutary power vested in a probate court.

■ ■ The probate court is specially charged with the duty of supervising and scrutinizing the administration of estates of decedents and wards within its jurisdiction. (Secs. 1–1202, 15–1113, I. C. A.) The statutes governing the settlement of accounts of executors and administrators apply alike to guardians. (Sec. 15–1834, I. C. A.) Section 15–1118 provides that "any person interested in the estate may appear and file his exceptions in writing to the account and contest the same." Although exceptions be not filed to the report, it is nevertheless the duty of the court to examine into the account and determine whether it is correct before approving it. Section 15–1113, I. C. A., provides:

"In rendering his account the executor or administrator must produce and file vouchers for all charges, debts, claims and expenses which he has paid, which must remain in the court; and he may be examined on oath touching such payments, and also touching any property and effects of the decedent, and the disposition thereof. When any voucher is required for other purposes it may be withdrawn on leaving a certified copy on file; if a voucher is lost, or for other good reason cannot be produced on the settlement, the payment may be proved by the oath of any competent witness."

Section 15–1120 further provides that such settlement "is conclusive against all persons."

This court in *Luke v. Kettenbach*, 32 Ida. 191, 181 Pac. 705, following a line of California cases, held that this statute

(sec. 15-1120), making settlement of account conclusive, applies only to a *final account, in a guardianship matter,* and the court cited and approved the rule announced in *Guardianship of Cardwell,* 55 Cal. 137. In the Luke case this court also recognized the power of the probate court to charge a guardian with items for which he had taken credit or which he had not reported and to enter judgment against him therefor.

In *In re Estate of Sanderson,* 74 Cal. 199, 15 Pac. 753, the supreme court of California had under consideration sec. 1631, Cal. C. C. P., which is identical with our sec. 15-1113, *supra,* and said:

''Appellant claims that, by failing to contest his verified account upon the specific ground that the balance of the 'Braly note' remained uncollected by reason of the neglect of the executor, the contestants admitted that it remained uncollected without any fault on his part. Section 1631, Code Civil Proc., provides that, on rendering his account, the executor may be examined on oath touching any property or effects of the decedent. The power of the court so to examine him, and to base the terms of its decree settling the account upon such examination, is not limited by the circumstance that no person interested in the estate has filed specific exceptions to which the examination is appropriate. To hold that the executor should be entitled to the benefit of every credit to himself in his account, which is not specifically objected to by a party in interest, would be to deprive the court of its wholesome supervision over the accounts of executors and administrators, to encourage negligence, and open the way for fraud. It seems to have been held in *Trotter's Case,* 40 Miss. 711, that the probate courts of that state 'cannot command the conscience of an administrator so as to compel him to conform his returns under oath to the views of the court.' But, as we have seen, section 1631 of our Code (Code Civil Proc.) provides in terms that the executor or administrators may 'be examined.' And in addition to what is said in *Estate of Moore,* [72 Cal. 335] 13 Pac. Rep. 880, and in *Estate of Herteman,* [73 Cal. 545] 15 Pac. Rep. 121, the power of the court to go behind an ac-

count, and its duty to require a full and fair account, was recognized in *Hirschfeld v. Cross,* 67 Cal. 662, 8 Pac. Rep. 507, and other decisions. In the case last mentioned this court said: 'The probate court is the guardian of the estates of deceased persons, and has control of the person appointed by it to administer the estate, subject to review as provided by law.'

''Even if it should be conceded that an account presented by an executor establishes its own correctness *prima. facie,* the account should at least show on its face that a failure to collect a debt due to decedent was not the result of the negligence of the executor. Every executor is chargeable with the whole of the estate of the decedent which may come into his possession, at the value of the appraisement contained in the inventory. ·Code Civil Proc., 1613. . . . .

''But the proceeding in probate for the settlement of an account is *sui generis,* bearing but a distant and incomplete analogy to the procedure for an accounting in equity. The executor or administrator derives his power to act as such from the will, or order of the court, but in his conduct of the affairs of the estate he is subjected largely to the discretion and control of the court. The court is bound to protect the estate, and, as far as may be, the rights of all concerned. Publication is had that all interested may have an opportunity, by written exceptions, to call the attention of the court to alleged errors or defects but, *in the absence of exceptions, the court may and should inquire into any matter which may seem to the court objectionable, and pass judgment thereon;* and, in the presence of specific objections, the court is not limited to the specific objections. . . . .

'' We are clearly of opinion that exceptions to an account do not create 'issues of fact joined,' such as must be submitted to a jury on demand of a party in interest. The language of section 1635 does not of itself require the elaborate procedure provided for in sections 1312–1314. No time is given the executor to prepare to meet or to answer the exceptions; although, doubtless, in proper cases, the court may grant him time to secure further evidence in support of his account as rendered. On the day appointed, or on *any*

*subsequent day* to which the hearing may be postponed, any party in interest may 'contest the account.' True, his exceptions must be in writing, but this may well be that the point of his objections shall be made clearly to appear to the court. It is proper, and we believe it has been the practice, to extend to contestants the widest latitude in amending and supplementing their exceptions. What, then, is the purpose of section 1635? To us it appears the object is that all interested may inspect, and, if it is desired, object, to the account. *But it is the duty of the court carefully to scrutinize the account, and to reject all claims of the executor illegal in themselves or unjust in fact.* The court might perhaps overlook particular objections which were not called to its attention; and the exceptions are permitted in aid of the court when performing its duty of making the account correct. It was not intended to deprive the court of its power to supervise in every particular the accounts of executors and administrators, a power conferred for the protection of all interested, including infants, and oftentimes adults ignorant of their rights.''

The Sanderson case appears to have been followed and approved uniformly in California ever since it was decided. (See *In re Randall's Estate*, 188 Cal. 329, 205 Pac. 118; *In re Willey's Estate*, 140 Cal. 238, 73 Pac. 998; *In re More's Estate*, 121 Cal. 635, 54 Pac. 148, 150.)

In *In re Willey's Estate*, the court said:

''Whether the contestants were entitled to appear and object to the account, or whether the court erred in refusing to admit in evidence the alleged agreement of C. W. Willey, or whether contestants are estopped by the act of C. W. Willey in receiving a similar payment from the executors, are, in our judgment, questions of no moment, because, independent of objections urged by any person to items in an account, it is the duty of the court, in settling such account, to carefully scrutinize the same, and to reject any improper items therefrom; and it is the duty of the court to do this whether objections are interposed or not. *Estate of Sanderson*, 74 Cal. 202, 15 Pac. 753; *Estate of Spanier*, 120 Cal. 701, 53 Pac. 357; *Estate of More*, 121 Cal. 639, 54 Pac. 148; *Estate of Franklin*, 133 Cal. 587, 65 Pac. 1081.''

and in *In re Bruggemeyer's Estate,* 115 Cal. App. 525, 2 Pac. (2d) 534, the California District Court of Appeals, citing the Willey's case, said:

"Independent of objections urged by any person to items in the account of an executor, it is the duty of the court, especially where the item is brought to the attention of the court in settling the account, to carefully scrutinize the same and to reject any improper items therefrom, whether objections are interposed or not. *Estate of Willey,* 140 Cal. 238, 73 Pac. 998; 12 Cal. Juris. 56.''

The reasoning of the Sanderson case is sound and logical and seems to us a clear analysis of the statutes applicable. Our probate laws were adopted from the California code, and while we are not bound by the California decisions thereon, nevertheless they are of high authority on the statutes construed.

It would greatly hamper the administration of estates of decedents and wards, if it should be held that judgments and orders of the probate court settling the final accounts of executors, administrators and guardians can be collaterally attacked after they have become final. There would be no security or safety in such orders and judgments if every time a suit is brought on the official bond of an executor, administrator or guardian, the final account could be opened up and litigated by the surety. Nor is the objection obviated by saying that the order settling the account must rest on specific issues, joined by the report on the one hand and written objections by some interested party on the other hand.

The evidence taken on the hearing may disclose facts which necessitate an order not in harmony with the report or prayer thereof for its settlement. (Sec. 15–1113, I. C. A.) Or it may be that the report itself, on its face, discloses a state of facts that convince the court as a matter of law that the guardian (or other representative) is legally liable for an item or items—as for conversion because of negligent or improvident loan or investment. This is apparently what occurred in the probate court in the case at bar. The probate court concluded, as a matter of law (whether correctly or erroneously) that, upon the state of facts reported with reference to the deposit of the funds of the ward's estate, the guardian was responsible as for a conversion or mis-

application of the fund, by depositing it in the bank on what amounted to a time loan, without an order therefor.

■ The primary question to be answered by this court is: Did the probate court have the jurisdiction to make the ruling and charge the guardian with the fund and order her to pay it over to the ward? We are not here interested in the question as to whether the probate court correctly decided the matter thus confronting him, but rather did he have the power to decide it. If he had the power to decide it, as appellant claims he should have decided it, then he also had the power to decide it against appellant. In other words, if he had jurisdiction, then he had the *power* to commit an error. If the probate court erred and the decree settling the account is erroneous, the answer is that a remedy was available to both the guardian and surety to have the judgment reviewed and the error corrected both by motion in the court where entered (*Luke v. Kettenbach*, 32 Ida. 191, 197, 181 Pac. 705; *Baldwin v. Anderson*, 51 Ida. 614, 8 Pac. (2d) 461; same case, 52 Ida. 243, 13 Pac. (2d) 650; and by appeal, sec. 5–905, I. C. A.; *Miller v. Prout*, 32 Ida. 728, 187 Pac. 948).

■ We are unable to escape the conviction and consequent conclusion that the judgment of the probate court settling the account and ordering the guardian to pay the sum found due was within the probate jurisdiction, and that being true, and the judgment having become final (*Estate of McVay*, 14 Ida. 64, 93 Pac. 31), it is conclusive against all the parties in interest and concludes the guardian's surety as to the amount found due from the guardian to her ward, and cannot be collaterally attacked. (*Walker B. & T. Co. v. Steely*, 54 Ida. 591, 34 Pac. (2d) 56.)

■ Section 15–1808, I. C. A., sets forth the obligations of the guardian's surety and provides as follows:

"Before the order appointing any person guardian under this chapter takes effect, and before letters issue, the judge must require of such person a bond to the minor, with sufficient sureties, to be approved by the judge, and in such sum as he shall order, conditioned that the guardian will faithfully execute the duties of his trust according to law; and the following conditions shall form a part of such bond, without being expressed therein:

"1. To make an inventory of all the estate, real and personal, of his ward that comes to his possession or knowledge, and to return the same within such time as the judge may order.

"2. To dispose of and manage the estate according to law and for the best interest of the ward, and faithfully to discharge his trust in relation thereto, and also in relation to the care, custody, and education of the ward.

"3. To render an account, on oath, of the property, estate and moneys of the ward in his hands, and all proceeds or interests derived therefrom, and of the management and disposition of the same, within three months after his appointment, and at such other times as the court directs; and at the expiration of his trust to settle his accounts with the court or with the ward, if he be of full age, or his legal representatives, and to pay over and deliver all the estate, moneys, and effects remaining in his hands, or due from him on such settlement, to the person who is lawfully entitled thereto. Upon filing the bond, duly approved, letters of guardianship must issue to the person appointed. In form, the letters of guardianship must be substantially the same as letters of administration; and the oath of the guardian must be indorsed thereon that he will perform the duties of his office, as such guardian, according to law."

Under such a statute the surety when it executed the bond contracted and agreed to be bound by any and all orders made by the probate court, within the scope of its jurisdiction, adjudging or decreeing any duty or liability of the guardian. The appearance of the guardian was the appearance of the surety for all purposes of fixing and determining the liability of the principal for whom the surety had bound itself. It is chargeable with notice of every proceeding taken in the probate court touching the liability of its principal. So it cannot be successfully contended that the surety has not had its day in court or that it is deprived of property or right without due process. (*Baldwin v. Anderson*, 50 Ida. 606, 299 Pac. 341; *American Surety Co. v. Baldwin*, 287 U. S. 156, 53 Sup. Ct. 98, 77 L. ed. 231, 86 A. L. R. 298.)

One of the obligations of the bond, made such by statute (sec. 15–1808) provides:

"And at the expiration of his trust to settle his accounts *with the court* or *with the ward,* if he be of full age, or his legal representatives, and to pay over and deliver all the estate, moneys, and effects remaining in his hands, or due from him on such settlement, to the person who is lawfully entitled thereto." (Italics ours.)

It is generally held that the settlement of the account (with either the *ward or the court*) is essential to the maintenance of an action on the bond. (*Reither v. Murdock,* 135 Cal. 197, 67 Pac. 784; *Trumpler v. Cotton,* 109 Cal. 250, 41 Pac. 1033, 1034; *Graff v. Mesmer,* 52 Cal. 636; *In re Allgier et al.,* 65 Cal. 228, 3 Pac. 849.)

We purposely refrain from expressing any opinion whatever as to the correctness of the legal conclusion reached by the probate court, and the district court as well, upon the facts presented by the guardian's report. We simply hold that the judgment was appealable (sec. 11–401) and could have been reviewed, and, having now become final, is *res judicata* as to the amount found due from the guardian to the ward.

It is also contended by appellant that the respondent, having alleged in her complaint in this case the facts upon which the decree was based in the probate court, has thereby waived the right to rely on estoppel by judgment, and in support thereof cites 34 C. J. 749; *Megerle v. Ashe,* 33 Cal. 74; *Cooley v. Snake River Dist. Improve. Co.,* 78 Or. 384, 152 Pac. 1190; *Brownsville v. Loague,* 129 U. S. 493, 9 Sup. Ct. 327, 32 L. ed. 780; 2 Freeman on Judgments, 5th ed., sec. 730. The rule adopted by these authorities cannot apply to the case before us. Here the plaintiff pleads the judgment at length and then alleges: "that the said order and decree has never been appealed from or vacated and that the same remains in full force and effect." The prayer is for the recovery of the amount found due by the probate court. The fact that the complaint contains the principal allegations on which the judgment of the probate court was based does not change the cause of action or waive the estoppel of the judgment of the probate court on which the plaintiff predicates her case against the surety on the bond.

Counsel for appellant suggest in their brief that there has been collusion between the guardian and ward to

secure this judgment against the surety, and in support thereof cite the fact that the ward is here represented by the same counsel who represented the guardian in making her final report, and that she allowed a default judgment to go against her in this case. We cannot consider this contention, for the reason that no issue was tendered in the trial court suggesting collusion or fraud in the settlement of the account or the prosecution of this action.

Having reached the conclusion that the judgment of the probate court is final and conclusive on the settlement of the account, and that it cannot be collaterally attacked by the surety in this action on the guardian's bond, it becomes unnecessary to consider any other issue raised on this appeal.

The judgment is affirmed with costs to respondent.

Givens, C. J., and Morgan and Holden, JJ., concur.

Budge, J., expresses no opinion.