[No. 4785. Decided December 10, 1903.]

DAVID L. COPELAND, *Executor of the Estate of William
Copeland, Deceased, Appellant,* v. CITY OF
SEATTLE *et al., Respondents.*[1]

MUNICIPAL CORPORATIONS—NEGLIGENCE—LIABILITY FOR ACT OF
BUILDER—DEATH OF PEDESTRIAN IN STREET—BUILDING PERMIT—
WARNING. A city, by granting a building permit and failing to
give notice of the danger in using a street, does not render itself
liable for the death of a pedestrian in front of a building under
construction, who was struck by a timber negligently thrown
down by the party constructing the building.

DEATH BY WRONGFUL ACT—RIGHT OF ACTION—SUIT BY EXECU-
TOR FOR BENEFIT OF WIDOW. Under Bal. Code, §§ 4828 and 4838,

[1]Reported in 74 Pac. 582.

an action for damages for wrongful death may be maintained by the decedent's executor, for the use of his widow, in the absence of an action by her, and is not subject to an objection of want of capacity in the plaintiff to sue, although the widow's sanction must be shown before the defense is put in.

Appeal from a judgment of the superior court for King county, Morris, J., entered June 30, 1903, upon sustaining a demurrer to the complaint, dismissing an action for damages for a death caused by negligently throwing a timber from the roof of a building into the street. Reversed in part and affirmed in part.

*C. W. Turner* (*R. W. McClelland,* of counsel), for appellant.

*M. Gilliam* and *William Parmerlee,* for respondent City of Seattle.

*Wright & Kelleher* and *John T. Condon,* for respondent The Swedish Evangelical Lutheran Gethsemane Church.

FULLERTON, C. J.—In this action the appellant, as executor of the estate of William Copeland, deceased, sought to recover damages for the death of his testator, caused, as he alleges, by the wrongful and negligent acts of the respondents. The respondents separately interposed demurrers to the complaint on the grounds, among others, that the appellant had no legal capacity to sue, and that the complaint failed to state facts sufficient to constitute a cause of action; which demurrers the trial court sustained, entering a judgment of dismissal after the appellant had elected to abide by his complaint.

For a cause of action the appellant alleged, in substance, that on May 15, 1901, the respondent The Swedish Evangelical Lutheran Gethsemane Church was engaged, as proprietor and under its own supervision, in the construction of a church building on its own property, situated in the

city of Seattle; that, while it was so engaged in the construction of the building, the appellant's testator passed along the street in front of the building, the street being a public thoroughfare of the city of Seattle, when the church, without fault of the testator or warning or notice to him, "caused to be hurled down or thrown upon said street from the roof of said building, and from a distance of more than twenty feet from and above said street, a piece of plank or timber, which struck the said William Copeland upon the head, and thereby fractured and crushed his skull, and inflicted upon him a mortal wound, from which said wound he . . . died."

He further alleged that the "building was authorized by" the respondent city, but that neither the church nor the city took any precautions whatever to prevent the use of the street by pedestrians, or placed any kind of a warning thereon, notifying pedestrians that its use was dangerous.

On the matter of his right to maintain the action, the appellant alleged, that the deceased died testate, naming the appellant as his executor; that he had been confirmed as such by the superior court having jurisdiction over the testator's estate; that the deceased left a widow dependent upon him for support, but no child or children; that the widow was damaged because of the death of the deceased in the sum of $15,000.00, for which sum judgment was demanded "for the benefit of such widow . . and . . to her use as damages . . . ."

Taking up the question of the sufficiency of the facts to constitute a cause of action, it is at once apparent that the demurrer of the city was properly sustained on that ground. True, it is alleged that the city "authorized" the construction of the building, and gave no notice or warning that there was danger in passing it while it was in the course of

construction, but this is insufficient either to fasten upon it the neglect of its co-respondent, which caused the death complained of, or charge it with an independent neglect. The allegation that the city authorized the construction of the building, when taken in connection with what is elsewhere alleged in the complaint, means no more than that the city granted to its co-respondent a permit to construct the building, or did not forbid its construction; it carries with it no implication of participation on the part of the city. Clearly, a city, by granting a building permit, does not render itself liable for the negligent acts of persons constructing a building under a permit so granted. Nor is this allegation aided by the allegation that no notice or warning of the danger was given. This was not a danger that the city was bound to guard against. Had it granted to the respondent church the right to use the street, and then knowingly suffered it to so use it as to endanger the lives of persons traveling upon the street, a different question would be presented; but it was not bound to anticipate that the persons erecting the building would be so grossly negligent as to throw a board from the roof of the building into the street. If it can be held liable for such an act, there is no wrong which one of its citizens may inflict upon another for which it is not liable.

It is not questioned that the facts stated are sufficient, as against the demurrer on that ground of the respondent The Swedish Evangelical Lutheran Gethsemane Church, but it is contended on its behalf that the appellant has no legal capacity to sue. The argument is that, inasmuch as the right of one person to maintain an action for the death of another is a statutory and not a common law right, and as the statute of this state grants the right only where there is

a surviving widow, or child, or surviving children, the right to sue must be vested in those in whom the beneficial interest is vested, and an executor or administrator, or the estate which he represents, has no such interest. The sections of the code conferring the right to maintain an action for the death of a person caused by the wrongful act or neglect of another are as follows (Bal. Code, §§ 4828, 4838):

"The widow, or widow and her children, or child or children if no widow, of a man killed in a duel, shall have a right of action against the person killing him, and against the seconds and all aiders and abettors. When the death of a person is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death; or when the death of a person is caused by an injury received in falling through any opening or defective place in any sidewalk, street, alley, square, or wharf, his heirs or personal representatives may maintain an action for damages against the person whose duty it was, at the time of the injury, to have kept in repair such sidewalk or other place. In every such action the jury may give such damages, pecuniary or exemplary, as under all circumstances of the case may to them seem just.

"No action for a personal injury to any person occasioning his death shall abate, nor shall such right of action determine by reason of such death if he have a wife or child living, but such action may be prosecuted, or commenced and prosecuted, in favor of such wife, or in favor of the wife and children, or if no wife, in favor of such child or children."

Construing these sections, we have held that the term "heirs" meant the widow and children of the deceased, and did not include parents and collateral heirs, and that the only persons who could be the beneficiaries of such an ac-

tion were the wife and children of the deceased. *Graetz v. McKenzie,* 3 Wash. 194, 28 Pac. 331; *Northern Pac. R. Co. v. Ellison,* 3 Wash. 225, 28 Pac. 333, 29 Pac. 263; *Hedrick v. Ilwaco R. & N. Co.,* 4 Wash. 400, 30 Pac. 714; *Dahl v. Tibbals,* 5 Wash. 259, 31 Pac. 868; *Noble v. Seattle,* 19 Wash. 133, 52 Pac. 1013, 40 L. R. A. 822; *Nesbitt v. Northern Pac. R. Co.,* 22 Wash. 698, 61 Pac. 141; *Robinson v. Baltimore, etc. Refining Co.,* 26 Wash. 484, 67 Pac. 274.

While in none of these cases was the precise question here presented before the court, yet in several of them it was touched upon, incidentally it may be, but in such a way as to clearly indicate what the court's views thereon were at the time the case was under consideration. For example, in *Graetz v. McKenzie* it was said that under the first section above quoted "either the heirs or personal representatives, but not both, may bring the action therein provided for, and recover such damages, pecuniary or exemplary, as to the jury may seem just under the circumstances." In *Hedrick v. Ilwaco R. & N. Co.* it was said: "Usually the right of action, as in Lord Campbell's act, is given to the executor or administrator, and the sum recovered inures to the benefit of the particular individuals designated by the statute. In this state, as has been seen, . . . the heirs or personal representatives may maintain the action, . . ." And in *Noble v. Seattle* the court quoted approvingly from *Henderson's Adm'r v. Kentucky Cent. R. Co.,* 86 Ky. 389, 5 S. W. 875, where it was stated by the Kentucky court, when passing upon a statute in the respect in question almost exactly like our own, that the right to maintain the action was vested in the administrator by the language used, although he could exercise the right

only for the use and benefit of the wife and children of the deceased.

These cases, as we say, accepted the rule as unquestioned that an executor or administrator could maintain an action against any one who, by wrongful or negligent acts, caused the death of his testator or intestate, provided the deceased left a widow, a child, or children, dependent upon him for support; and this, whether such persons were, or were not, under disability to sue in their own names. It seems to us now that this is the correct construction of the statute. It is the only way effect can be given to the phrase "personal representatives," as used therein, without departing from its natural and usual meaning. The legislature has power to confer upon one person the right to maintain an action for the use and benefit of another, and the argument *ab inconvenienti* will not be allowed to weigh as against a plain grant of the right.

It is true, the defendant cannot be subjected to two actions for the one cause, and as the widow has the first right to sue, it must be made to appear, at some stage of the proceedings prior to the time the defendant is called on to put in his defense, that the widow has knowledge of, and sanctions the action brought by the personal representative, so that she cannot afterwards repudiate his acts and maintain an action in her own name. The danger of a defendant's being subjected to more than one action is, however, not very real. It is always within the power of the courts to protect a defendant against the possibility of being so subjected, and doubtless they will do so when called on at the proper time.

Of the cases from other jurisdictions where similar statutes exist, the only one cited as taking an opposite view is the supreme court of South Dakota in the case of *Belding*

v. *Black Hills & Ft. P. R. Co.,* 3 S. D. 369, 53 N. W. 750.
That court held in the case cited that the statute created
successive rights of action, vesting the right first in the
widow, to the exclusion of the heirs and personal represen-
tatives; next in the heirs, to the exclusion of the personal
representatives; and lastly, in the personal representatives,
for the benefit of the estate of the deceased; holding that
the right to maintain the action carried with it the exclusive
right to the damages recovered. This construction of the
statute as to the persons entitled to the damages recovered,
it will be noticed, is at variance with the decisions of this
court in the cases cited, *supra,* and we cannot think it in
point on the question under discussion for that reason. If
it be the rule that the right to the damages goes first to the
widow, to the exclusion of the heirs and personal represen-
tatives, and to the others in order, then the holding that the
one entitled to the damages must sue for it, and has the
exclusive right so to do, is undoubtedly sound. But we
have held that the widow and children share the damages
recovered jointly; and that, if there be no widow or chil-
dren, there is no right of recovery at all—a construction
of the statute wholly different from that given it by the
South Dakota court, and one which seems to us must call
for a different rule on the question as to who has the right
to maintain the action. Other cases more nearly in point
are the following, which support the rule as we have an-
nounced it: *Louisville & N. R. Co. v. Sanders,* 9 Ky. L.
690, 5 S. W. 563; *Henderson's Adm'r v. Ky. Cent. R. Co.,*
*supra; Munro v. Dredging etc. Co.,* 84 Cal. 515, 24 Pac.
303, 18 Am. St. 248; *Dueber v. Northern Pac. R. Co.,* 100
Fed. 424.

The judgment appealed from is affirmed as to the re-
spondent the City of Seattle, and reversed and remanded

as to the respondent The Swedish Evangelical Lutheran Gethsemane Church, with leave to such respondent to answer to the merits within such time as the trial court may fix.

MOUNT, DUNBAR, ANDERS, and HADLEY, JJ., concur.