623 P.2d 900

E. J. HOGAN and Katherine Hogan, husband and wife, Plaintiffs-Respondents,

v.

Joey Dean HERMANN, Evelyn K. Hermann, formerly Evelyn K. Johnson, and Charles Hermann, Defendants and Third-Party Plaintiffs-Appellants,

v.

Stephen J. McGRATH, Third-Party Defendant-Respondent.

No. 12538.

Supreme Court of Idaho.

Dec. 30, 1980.

William A. Stellmon of Ware, Stellmon & O'Connell, Lewiston, for defendants and third-party plaintiffs-appellants.

John Hepworth and John T. Lezamiz of Hepworth, Nungester & Felton, Buhl, for plaintiffs-respondents.

McFADDEN, Justice.

ON REHEARING

Respondents E. J. Hogan and Katherine Hogan brought this action to recover for

the wrongful death of their 26 year old married daughter, Carol Jean McGrath. The deceased was killed April 14, 1972, near Moscow, Idaho, in an automobile collision between her vehicle and a vehicle owned by appellants Charles and Evelyn Hermann and driven by their 15 year old son, Joey Hermann. Carol Jean McGrath died without issue but was survived by her parents and by her husband, Stephen J. McGrath.

In November 1972 an action was filed by Stephen J. McGrath against appellants for the wrongful death of his wife. The complaint alleged that he was the surviving husband of the deceased but made no mention of any additional surviving heirs. Thereafter, upon suggestion from Hermann's counsel, the complaint was amended to allege that Stephen J. McGrath was the "surviving husband and sole and only heir of Carol Jean McGrath." The case proceeded and was set for jury trial on April 16, 1973.

On April 13, 1973, Stephen J. McGrath's attorneys confronted Hermann's attorney with information they had discovered while doing legal research on the case which they believed would facilitate a settlement. McGrath's attorneys disclosed that the deceased had parents living who were in the respondents' opinion, heirs under the statute [see discussion infra] and therefore also entitled to recover for the wrongful death of Carol McGrath. McGrath's attorneys were also the attorneys for the parents, and they had been authorized to settle the parents' claim as well as the husband's claim. A settlement figure for both claims was then given to Hermann's attorney, but this figure was rejected.

Following these discussions, and prior to trial, settlement of Stephen J. McGrath's claim was reached and his release was given. The release, drafted by the Hermann's attorney, expressly and unequivocably constituted an individual release by Stephen J. McGrath alone. The release did in no way refer to the Hogan's claim, nor did it provide that Stephen J. McGrath was settling the action on behalf of all potential claimants. Nor did it provide or suggest that the

settlement recovery was held by McGrath in trust for the Hogan's benefit. McGrath's action was thereafter dismissed with prejudice.

The instant action was filed June 19, 1973, some two months after the dismissal of Stephen J. McGrath's case. The Hogans alleged that they were surviving heirs, entitled to bring the action under I.C. § 5–311. They sought damages for the loss of their daughter's services, society, and companionship.

Appellants filed a motion to dismiss the complaint on grounds that it failed to state a claim for relief and that the action was barred by reason of the earlier settlement and release of Stephen J. McGrath's claim and dismissal of his suit. The motion was supported by the affidavit of appellants' attorney which basically recited the facts given in the above portion of this opinion. The affidavit also stated that "no settlement of the claim of the parents of Carol Jean McGrath as a separate claim from the claim of Stephen J. McGrath, was made for the reason that defendants [appellants] considered the settlement that was made to be determinative of the claims of all the heirs of Carol J. McGrath." This statement was made in contradiction of the language of the actual release, which consisted solely of a settlement of McGrath's individual claims. Respondents' attorney then filed his affidavit in opposition to the motion, stating that the "negotiations resulted in an understanding between the attorneys representing all parties that the claim of Stephen J. McGrath would be settled for him alone without prejudice to the right of the parents of the decedent to initiate their independent action for her death . . . ."

The district court denied appellants' motion to dismiss the action. The court concluded that the Hogans were heirs of the deceased and therefore entitled to maintain the action. Appellants were ordered to answer the complaint.

By way of answer, appellants denied that the Hogans were surviving heirs and raised as affirmative defenses the same grounds as had been raised in the motion to dismiss:

that the complaint failed to state a claim for relief, and that the Hogans were barred from bringing the action because of the prior settlement. Appellants also filed a third party complaint against Stephen J. McGrath, alleging that he held the previously obtained settlement monies in trust for all heirs and seeking to recover over from him any judgment which the Hogans might be awarded.

Respondents moved to dismiss the third party complaint and to strike the affirmative defenses and denial of heirship from appellants' answer. Additional affidavits restating the substance of the earlier affidavits were filed by both sides and a hearing was held on the motion.

The district court granted the respondents' motion in all respects. The motion to dismiss the third party complaint was treated in effect by the court as a motion for summary judgment, and was granted. In accordance with I.R.C.P. 54(b), the court expressly determined that there was no just reason for delay in entering judgment on the claim, and thereafter entered judgment of dismissal with prejudice of the third party complaint. Appellants timely filed their notice of appeal from that judgment. Appellants subsequently filed in this court a motion for certification of appeal from the interlocutory orders of the district court denying appellants' earlier motion to dismiss and granting respondents' motion to strike portions of appellants' answer. By order of this court, these interlocutory orders were certified for appeal and were consolidated for review with the appeal from the summary judgment dismissing the third party complaint.

The first issue raised by appellants is whether the Hogans, as surviving parents, are heirs of the decedent Carol Jean McGrath. Appellants argue: (1) that I.C. § 5–311 permits only the heirs (or personal representative on their behalf, which is not the case here) to bring an action for wrongful death; (2) that under the new Idaho probate code, I.C. § 15–1–201(21) "heirs" mean those persons, including the surviving spouse, who are entitled under the statutes

of intestate succession to the property of a decedent; (3) that parents are not entitled under I.C. §§ 15–2–102 or 103 to the property of the decedent unless she died possessed of a separate estate in excess of $50,000; (4) that absent the allegation of a separate estate in excess of $50,000 the complaint does not state a claim for relief; (5) that the trial court therefore erred in denying appellants' motion to dismiss the complaint and in ordering appellants' denial of heirship struck from the answer.

Whatever the merits of this argument might be for wrongful deaths arising since the effective date of the new Idaho probate code, we express no opinion. Rather we confine ourselves and this opinion to the statutory intestate distribution scheme in effect at the date of death, the time when the right of action for wrongful death arose.

The accident and date of death occurred April 14, 1972. The legislature in enacting the probate code provided that: "(a) This code shall be in full force and effect on and after July 1, 1972 .... [But] (4) an act done before the effective date in any proceeding and *any accrued right is not impaired by this code.*" Session Laws, 1972, ch. 201, § 28, p. 534 (Emphasis added). Since the right to bring the wrongful death action accrued as of the date of death, *Russell v. Cox*, 65 Idaho 534, 148 P.2d 221 (1944); *Whitley v. Spokane Ry. Co.*, 23 Idaho 642, 132 P. 121 (1913) aff'd 237 U.S. 487, 35 S.Ct. 655, 59 L.Ed. 1060; S. Speiser, Recovery for Wrongful Death, § 11:10 (2d ed. 1975); 22 Am.Jur.2d Death § 40 (1965); 97 A.L.R.2d 1151, 1154 § 3 (1964), we must look to the statutes in effect on that date to determine whether the surviving parents are heirs of the decedent.

The intestate distribution statute in effect on April 14, 1972 was I.C. § 14–103. It provided that

"14–103. Succession to property.— When any person having title to any estate not otherwise possessed limited by marriage contract, dies without disposing of the estate by will, it is succeeded to, and must be distributed, unless otherwise

expressly provided in this code, subject to the payment of his debts, in the following manner:

"....

"2. If the decedent leaves no issue, the estate goes, one-half to the surviving husband or wife, and the other half to the decedent's father and mother in equal shares, and if either be dead, the whole of said half goes to the other. If the decedent leave no issue, nor husband, nor wife, the estate must go to his father and mother, in equal shares, or if either be dead, then to the other."

This court has held that under this statute the parents and surviving spouse are heirs of a decedent in the event there are no issue. *Russell v. Cox, supra; Whitley v. Spokane Ry. Co., supra.*

We therefore hold that under the law in effect at the time the right of action accrued the Hogans were heirs of the decedent. The district court so ruled, and its orders denying appellants' motion to dismiss and striking the denial of heirship from the answer are affirmed.

The next issue concerns the effect of the earlier action brought by McGrath and of appellants' settlement of McGrath's individual claims.

I.C. § 5–311 provides that "[w]hen the death of a person ... is caused by the wrongful act or neglect of another, *his heirs* or personal representatives *may maintain an action* for damages against the person causing the death ...." (Emphasis added.) This language in and of itself would suggest that if the action is not brought by the personal representative of the decedent, then all heirs must join or be joined together to prosecute one wrongful death action.

Other jurisdictions have usually construed wrongful death statutes as authorizing but one joint and indivisible action in which all the damages for the benefit of all the potential beneficiaries shall be recovered. The cases hold that separate actions usually cannot be maintained by the several beneficiaries entitled under the acts. *Cross v. Pac. Gas and Electric Co.*, 60 Cal.2d 690, 36 Cal.Rptr. 321, 388 P.2d 353 (1964); *Per-*

*kins v. Robertson*, 140 Cal.App.2d 536, 295 P.2d 972 (1956); *Nelms v. Bright*, 299 S.W.2d 483 (Mo.1957); *Colgate-Palmolive-Peet Co. v. Perkins*, 48 S.W.2d 1007 (Tex. App.1932); S. Speiser, *supra* at § 11:42; 25A C.J.S. Death §§ 33(1), 57 (1966).

In *Whitley* this court held, 23 Idaho at 654, 132 P. at 124, that

"We agree ... that, *as a general rule, these actions cannot be split up and one action be prosecuted by one heir and another action by another heir,* or one action by the personal representatives of the deceased and another action prosecuted by the heirs, *provided the question or objection is timely raised in a proper manner.* (*St. Louis S. M. & S. Ry. Co. v. Needham*, [8 Cir.], 52 Fed. 371, 3 C.C.A. 129; *McBride v. Berman*, 79 Ark. 62, 94 S.W. 913; *Whelan v. Rio Grande R. R. Co.*, 111 F. 326; *Salmon v. Rathjens*, supra, 152 Cal. 290, 92 P. 733; *Copeland v. City of Seattle, supra* 33 Wash. 415, 74 Pac. 582, 65 L.R.A. 333; *Galveston H. & S. A. R. Co. v. Kutac, supra*, 72 Tex. 643, 11 S.W. 127)." (Emphasis added.)

The emphasized portion of the quotation from *Whitley* is fundamental to the resolution of this issue. It means at the least that the defendants can waive the benefits of the single action general rule. As said by the Supreme Court of Georgia in *Southeastern Greyhound Lines v. Wells*, 204 Ga. 814, 51 S.E.2d 569, 569–570 (1949),

"While the law requires, with certain exceptions, that a plaintiff bring his action for his full claim against the defendant, nevertheless this requirement, being primarily for the benefit of the defendant, may be waived by him, and the same rule applies regardless of whether the action is ex contractu or ex delicto. [Citations omitted.]

"....

"[T]he eleven children originally had a single cause of action under the Code, § 105–1302, for the negligent killing of their father. However, when the defendant company settled the claims of six of the children, it thereby waived the rule

against splitting a cause of action. Accordingly, the six children who signed a release were not necessary parties in a suit by the other five since they had no interest in the result of the suit. It follows that an action would lie in the other five children for their proportionate part of the value of their father's life, and the petition was not subject to any of the grounds of demurrer urged by the defendant."

In the instant case appellants knew of additional, non-party heirs at the time they settled with McGrath. By voluntarily electing to settle an action with one heir at this time, with full knowledge of other non-party heirs, appellants thereby waived the right to insist upon a single action joined in by all heirs. *Southeastern Greyhound Lines v. Wells, supra; Lynn v. Wagstaff Motor Co.*, 126 Ga.App. 516, 191 S.E.2d 324 (1972); 40 A.L.R.3d 108, 111 (1971). *See also Harshbarger v. Rankin*, 50 Idaho 24, 293 P. 327 (1930). The settlement with McGrath was limited to his claims only, and it does not constitute a bar to this action by the Hogans; clearly, however, the terms of the release and the dismissal of his action with prejudice bars McGrath's participation in a recovery under the Hogan action.

The final issue is whether Stephen J. McGrath holds his personal settlement recovery in trust for the benefit of the Hogans. The third party complaint alleges such a trust relationship, and prays for judgment against McGrath for any sums the parents might recover in their action. The district court granted summary judgment in favor of McGrath on the third party complaint.

The settlement with McGrath was made when appellants had full knowledge of other potential claimants. The release, drafted by appellants' counsel, relates solely to McGrath's personal damages suffered by the death of his wife. The cover letter (accompanying the release) sent by appellants' counsel to McGrath's counsel states: "[a]s you will note, the release relates only to this suit and Stephen McGrath's claim. Because of this, and since Mrs. McGrath's

parents were not parties to the suit, I did not feel it necessary to mention their names or to refer to them in any way." No trust relationship is expressed or implied therein.

The summary judgment dismissing with prejudice the third party complaint is therefore affirmed. The interlocutory orders denying appellants' motion to dismiss the complaint and striking portions of the answer are also affirmed. Costs to respondents.

DONALDSON, C. J., and SHEPARD, J., concur.

BISTLINE, J., concurs only in the holding that the Hogans are heirs of their deceased daughter by application of the probate code in effect at the time of the daughter's death, and in the holding that McGrath did not hold his settlement award in trust for other heirs.

BISTLINE, Justice, voting to affirm:

A proper resolution to the instant case is reached by examining the original Lord Campbell's Act as compared to the Idaho version and the code of civil procedure in effect in Idaho in 1913.

The Lord Campbell's Act was enacted by the English parliament in 1846, creating the cause of action for wrongful death, with Section 2 thereof making specific provision that it "shall be brought in the name of the executor or administrator of the person deceased," with the same section providing that the action "shall be for the benefit of the wife, husband, parent, and child of the person whose death shall have been so caused," with the jury to award and proportion damages resulting from such death to the beneficiaries of the action. Section 3 is the significant provision with regard to the instant controversy:

"Provided always, that not more than one action shall lie for and in respect of the same subject matter of complaint; and that every such action shall be commenced within twelve calendar months after the death of such deceased person."

Our Idaho version was enacted in 1881, and has continued much the same to the

present day, without any changes significant to this case. In the original act, §§ 191 and 192 of C.C.P. 1881 dealt respectively with the cause of action for the death of a minor child, and, for the death of those not minors. As first written the action for the death of a minor was placed in the father, or, where he had deserted his family, therein the mother. This was unlike the English version. Also unlike the English act, our Idaho act placed the right to bring the action for the death of those not minors either in the heirs of the deceased person, or in the personal representatives of the deceased person. Neither section of *the Idaho act contains* or even comes close to containing *language such as Section 3 of the Lord Campbell's Act.* And that, I think, should be the end of argument that there is a supposed single action requirement in our Idaho act. There is none. On the other hand, the English act made such a specific provision, and at the same time did *not* allow for the bringing of such an action by any one other than the executors and administrators of the deceased. The heirs at law were merely the beneficiaries entitled to share in any recovery obtained, the executor or administrator being in the nature of their trustee. All of the case law shows that the recovery did not become any part of the estate of the decedent, and in the event there were no heirs of the decedent, the personal representative, who only brings suit for benefitting heirs, has no cause of action at all.

*Whitley v. Spokane Ry. Co.,* 23 Idaho 642, 132 P. 121 (1913), seems to be the cause of confusion to the other members of the Court, and causes the controversy between them centered on the proper application of the "single action" theory—when in truth and fact Idaho specifically did not enact and does not have a counterpart of Section 3 of the English act.

*Whitley* was a three-cornered affair, involving a defendant, two heirs, and the courts of three states. It was finally laid to rest in the Supreme Court of the United States. Whitley, a resident and citizen of Tennessee, was killed by the negligence of the Spokane Railway Co., the accident hap-

pening just across the state boundary line, in Idaho, near Coeur d'Alene. He was survived by his widow Josephine and his mother, Mary. Josephine was also a resident and citizen of Tennessee. As Justice Ailshie noted in his careful presentation of the facts, approximately a month after Whitley's death the railway company reached a settlement agreement with Josephine at the figure of $11,000, upon which agreement it paid her $1,500, agreeing to pay the balance upon being presented proof of her appointment as Whitley's administrator. This she secured, and by the probate court in Tennessee was "authorized and directed to make settlement for the sum of $11,000, in accordance with the previous agreement entered into between her and the railroad company." 23 Idaho at 651, 132 P. at 123.

Mary Whitley, who will be referred to as Mother Whitley, meanwhile, and within three months after the death of Whitley, brought the wrongful death action in Idaho, which was to be later reported in 23 Idaho 642, 132 P. 121, 237 U.S. 487, 35 S.Ct. 655, 59 L.Ed. 1060. Mother Whitley quite properly named Josephine as a defendant, "for the reason that she refused to join as a plaintiff." 23 Idaho at 651, 132 P. at 123. Personal service could not be had on Josephine in Idaho, so Mother Whitley accordingly initiated constructive service upon her, so as to get all of Whitley's heirs before the Idaho court. The railroad, so it seems, having agreed to pay Josephine $11,000, not an inconsiderate amount in those days, apparently was not greatly interested in seeing Josephine brought into Mother Whitley's Idaho action, and equally not interested in paying Mother Whitley anything. Spokane counsel for the railroad, which was but a small concern based in Spokane, apparently "missed a point" in making the settlement agreement with Josephine, the point being that Washington law and Idaho law were not alike as to whom accrued the cause of action for wrongful death when a decedent left no issue surviving him, but did leave a widow and a mother.

Accordingly, after the filing of Mother Whitley's action, the railroad, seeing itself

faced with an obligation to fulfill its agreement with Josephine, and also to meet Mother Whitley's action, took rather precipitate action to forestall such an unfortunate eventuality. As mentioned above, the railroad had agreed to pay Josephine the balance due on the $11,000 settlement upon her appointment as administrator. It then insisted on Josephine bringing an action against it. As Justice Ailshie noted, the action was not framed on the basis of the railway company's negligence in killing Whitley, but rather upon the fact that he had been killed and Josephine's claim for wrongful death damages had been amicably settled for $11,000, and payment made upon that agreement.

This was not destined to be prolonged litigation. As the Court's opinion points out, the complaint was filed on November 18, 1909, and "[o]n the same date, November 18th, an answer and reply were filed and the case was tried without a jury . . . ." 23 Idaho at 652, 132 P. at 123. As the Supreme Court of the United States was to observe, "Mary Elizabeth Whitley [Mother Whitley] was not a party to the Washington suit, and no attempt was made to bring her in. It was swiftly determined, without contest." 35 S.Ct. at 656. Apparently impressed with the alacrity with which justice was dispensed in Spokane in those early days, that opinion expanded upon Justice Ailshie's factual recitation by noting that "the pleadings were filed shortly after 9 o'clock on the morning of that day; at 9:45 o'clock findings were filed (with a conclusion of law overruling the defense of the railroad company), and at 10 o'clock on the same morning judgment was entered in favor of the plaintiff for the sum of $9,500." *Id.* 23 Idaho at 656, 132 P. 121. All of which is interesting, to be sure, but serves well to illustrate that the factual situation in *Whitley* was a one-in-a-lifetime aberration, evolving from the railroad's determined effort to circumvent the course of justice then about to take place in the pending Idaho action. In no way can *Whitley* be said to stand for the "single action" theory today attributed to it by other members of the Court.

The Idaho action initiated by Mother Whitley thereafter went to judgment in her favor, the Court concluding that it was unnecessary to determine whether the constructive service which had been made upon Josephine was sufficient or not. 23 Idaho at 654, 132 P. at 124. That which the Court itself declared as being "decisive in this particular case" was that Josephine, having prosecuted and recovered in Washington, "on this same cause of action . . . can have no further recovery. It *was therefore unnecessary to make her a party, either plaintiff or defendant,* in this particular action in order to bind her by the judgment and preclude her further recovery." 23 Idaho at 654, 132 P. at 124 (emphasis added). The basic holding in *Whitley* relative to the issue at hand was exactly the foregoing.

The further and logical holding in *Whitley* was that Mother Whitley, having not been party to the Washington action, was *not* precluded from pursuing her own action in Idaho, the Court concluding with the pungent but apt statement that Mother Whitley and the railroad "have never met in court until in this action." 23 Idaho at 656, 132 P. at 125 (emphasis added). By that it can only be understood that she could not be bound by a judgment to which she was not party, and that there was no obligation on her part to hie off to Washington in an attempt to intervene in that action—which action, of course, was commenced and gone to judgment before the courthouse janitor even got wind of it, let alone Mother Whitley. Both parties to that Washington action knew of her existence and her right to recover as an heir under the Idaho law, but neither wanted her in, and, in fact, kept her out. So it would seem to be with the Hogans. Before judgment of dismissal in the McGrath action was entered, both McGrath and the Hermanns knew of the Hogans, and knew that, depending on the law, the Hogans might qualify as heirs.

Nothing which I see in *Whitley* even tends to support the proposition that the Court there read the Idaho wrongful death statute for the proposition that there could

not be two or more wrongful death actions brought for the death of one decedent, or that an heir entitled to recover could "waive" and lose his right to pursue his claim simply by not projecting himself into an action which had been initiated by some other heir. Whitley did suggest, with which I agree, that the better practice would be for one heir bringing suit to seek to bring in other heirs of whom he knows, as plaintiffs, or, if they decline to do so, then as defendants,[1] or, where the defendant knows of other heirs at law, and the plaintiff initiating the action has not brought them in as parties plaintiff or defendant, the better practice would be for the defendant to cause them to be ordered in by proper objection.

In *Whitley*, after holding against the railroad, the Court as a gratuity stated its agreement with the railroad's contention that, *"as a general rule,* these actions cannot be split up and one action be prosecuted by one heir and another action by another heir ... provided the question or objection is timely raised in a proper manner." 23 Idaho at 654, 132 P. at 124 (emphasis added). A few lines earlier, on that same page, it noted that the duty to bring in a known and uninvolved heir was "equally as exacting on the part of the railroad company as on the part of the plaintiff...." *Id.* For both of those statements, neither of which were holdings in the case, but nevertheless are not incorrect, the Court cited in support thereof *Salmon v. Rathjens*, 152 Cal. 290, 92 P. 733 (1907); *Copeland v. City of Seattle*, 33 Wash. 415, 74 P. 582 (1903); and *Galveston H & S.A.R. Co. v. Kutac*, 72 Tex. 643, 11 S.W. 127 (1889)—all of which well serve to demonstrate that the Court in *Whitley* did not understand the law in this country to be that an heir possessed of a wrongful death claim could be precluded from pursuing his claim if perchance a wrongful death action had been prosecuted to a monetary judgment or judgment of dismissal, and he had failed to be on board in that action.

The Washington case, *Copeland v. Seattle,* is the one which undoubtedly led to Spokane counsel "missing a point" when the settlement agreement was made with Josephine Whitley. In that case the court there reaffirmed its previous holdings that the word "heirs" used in the Washington wrongful death act "meant the widow and children of the deceased, and did not include parents and collateral heirs, and that the only persons who could be the beneficiaries of such an action were the wife and children of the deceased." 74 P. at 583. Apropos to the Hermann contention in this case that there has been the one suit which it is said by them that the law allows for wrongful death, the Washington court stated this:

> "The danger of a defendant's being subjected to more than one action is, however, not very real. It is always within the power of the courts to protect a defendant against the possibility of being so subjected, and *doubtless they will do so when called on at the proper time."* 74 P. at 584 (emphasis added).

In the *Kutac* case from Texas, it was a wife and mother who had been killed at a crossing. The father originally brought suit for the loss of his wife, the case going to judgment against him. Thereafter action was brought by the children. The defendant railroad sought dismissal of the case on the basis of the "single action" theory. Apparently the Texas statute was similar to the Idaho statute in dissimilarity to the English statute and its "single action provision." The Texas court, using language obviously favored by the Idaho Court in *Whitley*, said:

> "While it is true that the statute (Rev.St. art. 2899) authorizing the institution of suits of this character evidently intended that one suit should be brought, and although it has been so construed in several cases, (*Railroad Co. v. LeGierse*, 51 Tex. 189; *Railroad Co. v. Spiker*, 59 Tex. 435), *it was not intended by the statute, or the construction of it in the cases mentioned,*

1. In *Hepp v. Ader*, 64 Idaho 240, 130 P.2d 859 (1942), where two married daughters and their father were the heirs at law of Mrs. Hepp, allegedly killed by the negligence of the defendants, one daughter, refusing to come into the action as plaintiff, was named as a defendant.

*that a person having a right of action under that statute should be precluded, or his rights in any manner affected, by a judgment to which he was not a party,* in favor of the defendant, against one who might also have a right of action with such person. If several persons having the right to sue would be concluded by a judgment to which they were not parties, against one having the right of action with them, the result would be that one would have the power to compromise and destroy the rights of all who could sue in the same action. There is nothing in this inconsistent with the rule that *only one suit should be brought under the statute, and it is entirely within the defendant's power to require that only one such suit shall be brought.* Where, as in the case tried in the district court of Fayette county, it was developed during the trial that the plaintiffs were then living, and were the surviving children of the deceased, and as such entitled to sue, the defendant, if it desired a judgment binding upon them, could have required them by a proper plea to be made parties plaintiff. Not having done so, he ought not to be heard now to insist that they are concluded by a judgment rendered in a suit to which they were not parties, and which it could have had them made parties to if it desired them bound by it." 11 S.W. at 128 (emphasis added).

We come to the California case of *Salmon v. Rathjens, supra,* which was handed down by that court six years prior to *Whitley,* and to which the *Whitley* court would naturally extend proper deference, it appearing that the wrongful death cause of action enacted by Idaho in 1881 was· Idaho's adoption of the identical statute earlier enacted in California—§ 376 of the California Code of Civil Procedure became § 191 of the Idaho Code of Civil Procedure; similarly § 377 of the California Code became § 192 of the Idaho Code.

In *Salmon v. Rathjens,* supra, the California Supreme Court stated that:

"So far as heirs are concerned, a single joint cause of action is given.... The right of action in such a case being entirely statutory, the action must be brought in the names of the persons to whom the right is given by the statute.... An action by a portion only of the heirs is not the action authorized by our statute. All the heirs should, therefore, join as plaintiffs in an action by heirs, and if the consent of any one who should be so joined cannot be obtained, he may be made a defendant. Code Civ. Proc. § 382. It would, therefore, seem that *where all the heirs are not joined and timely objection is made* on that ground *by a defendant, the action should be abated, or,* at least, *the other heirs should be made parties.*" 92 P. at 735–36 (emphasis added).

I am able to agree with all of the foregoing, and I believe that without doubt it was the foregoing expression of the California court with which the Idaho court agreed in *Whitley,* as is readily evidenced by the almost identical language in *Whitley* that "as a general rule, these actions cannot be split up and one action be prosecuted by one heir and another action by another heir ... provided the question or objection is timely raised in a proper manner." 23 Idaho at 654, 132 P. at 124. In the California case the court there held that the defendant had failed to make any objection at the proper time, and later attempting the objection by seeking leave to amend during the trial came too late, the court observing that it did not appear "that the proposed amendment was essential to the protection of any substantial right of defendant ...," 92 P. at 736, which proposition will be mentioned again, post.

Of extreme significance is not only that the Idaho and California wrongful death statutes were identical at the time of *Whitley* and *Salmon v. Rathjens,* but both were embodied within the Codes of Civil Procedure of the two states. In 1881 the Idaho legislature enacted what was codified as C.C.P. 1881, and which included §§ 182 through 204 inclusive, in all respects identical and the counterpart of the California Code §§ 367 through 389. Those sections of

Idaho C.C.P. 1881, with slight amendments to some of them, were carried forward, eventually becoming provisions of Title V, chapter 3, I.C. §§ 5–301 through 5–324. It is important to keep this in mind in understanding why the California and Idaho legislatures in enacting wrongful death statutes saw no reason to, and good reason not to, incorporate any of the provisions of the English act which limited the right to bring the action to the deceased's executor or administrator, and providing that there could be but one such action. The reason was, of course, that the codes of civil procedure in both Idaho and California, identical in respect to that which we have under consideration, recognized that wrongful death causes of action were but one out of many types of action subject to the rule that potential plaintiffs possessed of a cause of action joint in nature ought not be allowed to bring a number of suits, and such proposition was part and parcel of the general provisions of the civil procedure code.

Hence C.C.P. 1881, § 193, now I.C. § 5–312[2] provided that "all persons having an interest in the subject of the action, and in obtaining relief demanded, may be joined as plaintiffs, except as otherwise provided in this code." I.C. § 5–313 provided for joinder of parties defendant, saying in part: "Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or *who is a necessary party to a complete determination or settlement of the question involved therein.*" I.C. § 5–316 provided in part: "Of the parties to the action, those who are united in interest must be joined as plaintiffs, or defendants; but if the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant . . . ." I.C. § 5–322 provided, as pertinent here, for the right of intervention:

> "Any person may, before the trial, intervene in an action or proceeding, who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both. An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by . . . demanding anything adversely to both the plaintiff and the defendant. . . ."

I.C. § 5–324 provided in part that: "When a complete determination of the controversy cannot be had without the presence of other parties the court must then order them to be brought in, and to that end may order amended and supplemental pleadings, or a cross-complaint to be filed . . ." Moving to Title V, Chapter 6, I.C. § 5–607(4)—which was § 232 of C.C.P. 1881, § 430 of the California Code—provided for a demurrer to the complaint when it appeared on the face thereof "that there is a defect or misjoinder of parties, plaintiff or defendant; . . ." Objections which could not be made under those provisions for demurring were required to be made by answer, and if not raised "either by demurrer or answer," were deemed to have been waived by defendant other than objections as to jurisdiction and failure to state a cause of action. I.C. §§ 5–610, 5–611 (repealed 1975). These provisions are important in evaluating the Idaho Court's holdings and statements in *Whitley*, and the California court's opinion in *Salmon v. Rathjens.* Everything leads to but the one conclusion: that the code provisions (and now the rules) are for the benefit of a defendant who prefers to not defend two or more lawsuits against plaintiffs who can join in a single action, but who have not done so. It points to the proposition that a person who ought to be, but has not been and declines to be a plaintiff, may be made a defendant, and that the court must order such a person into the action in order to bring about a complete determination of the controversy—such, however, being made to appear to the court. And, too,

---

**2.** Before my time the Court prevailed upon the legislature to repeal many of the sections being referred to in favor of coexisting court-promulgated rules of civil procedure. S.L. 1975, ch.

242. The provisions were in effect during the pendency of McGrath's action against the Hermanns, and during the pleading stage of this action.

there is the *right* in a person who has not been brought into the action by either the plaintiff or the defendant, to intervene. The long and short of it all is that the applicable Idaho rules and statutes do not require that a potential wrongful death claimant must intervene in the action of some other heir who has brought suit, or else be said to have given up his claim. Nor is he to be denied his claim simply because another lawsuit has proceeded without him. As to the decedent's heirs, and assume that there are more than one, who have the statutory right to sue for the damages, if each pursues his own action, as was the fact in *Whitley*, as to each of those persons each will have been put to but the single suit. On the other hand, it is the defendant who has to defend more than one action (which a given defendant might prefer doing), but it is also the defendant who has been given the right to insist on all those heirs joining in a single suit and, where they have not done so, to call the matter to the court's attention by proper objection timely raised.

Should the defendant choose or fail to take advantage of this right to so insist on a single action, the consequences, while they do entail the inconvenience and expense of preparing and submitting more than one defense, which is not an insubstantial interest, do not entail any consequence that the defendant will be "mulcted in damages" as the old saying goes. As in *Whitley*, each heir will receive nothing but those damages which are agreed upon by compromise, or which a jury at trial awards. There is not any worry that the defendant will be paying excessive damages by reason of some one heir receiving double damages. The *Whitley* case makes this quite clear. All that is at stake in this controversy is whether the Hermanns will or will not be required to stand the expense of defending the Hogan action—having previously avoided that expense by settling with McGrath. In that regard we were advised at oral argument that *McGrath v. Hermann* settlement conferences between counsel extended over a period of time during which the insurance carrier for the Hermanns was made fully acquainted with the circum-stances (which have brought members of the Court into conflicting views as to whether there was fault on the part of the Hogans in not seeking intervention, or fault on the part of the Hermanns in not seeking to bring the Hogans into the McGrath action rather than settling it) and made the determination to settle the claim of the one heir, but not the other.

At that point in time, and until the final resolution of that particular issue in this Court as to whether the Hogans are or are not heirs, and entitled to recover under the Idaho act, it could not have been known by any one what that ultimate decision would be. This is not a situation where additional heirs were unknown and thereafter later discovered, but rather where, on a second look at a change in Idaho statutory law, one party believed that the Court would rule on that issue as it now has, and so advised the other party. In all probability, the insurance carrier for the Hermanns simply "missed a point," so to speak, in guessing how the Idaho courts would rule, just as Spokane counsel in *Whitley* "missed a point" in believing that the Idaho court would hold, as had the court in Washington, that entitled heirs did not include parents.

The judgment should be affirmed.

*ADDENDUM* : After the foregoing was concluded, it was suggested that the California case of *Mayerhoff v. Kaiser Foundation Health Plan*, 71 Cal.App.3d 805, 138 Cal.Rptr. 319 (1977), ought to control our decision. I will briefly respond, having become rather conversant with that case and other cases cited therein while doing the research which has gone into that which I heretofore wrote, and particularly *Munro v. Pacific Coast Dredging & Reclamation Co.*, 84 Cal. 515, 24 P. 303 (1890), and *Salmon v. Rathjens, supra*, procedural holdings of which were relied upon in *Whitley*.

As I earlier pointed out, our wrongful death statutes enacted in 1881 were identical to the California acts and provisions enacted in 1872. The California Court of Appeals in *Mayerhoff* does not pay any heed to the fact that *Munro* discloses that

California had an earlier statute which obviously was the influencing factor in the *Munro* decision, and followed later in the *Salmon* decision—the latter being diametrically opposed to the direction this Court took in *Whitley.*

The earlier statute in California *was closely patterned after the Lord Campbell's Act,* and like that act, placed the cause of action *only* in the personal representative of the decedent for the exclusive benefit of the widow and next of kin, with the amount recovered to be distributed to the widow and next of kin in proportions based upon intestate distribution of personal property.[3] There was no right of action in the decedent's heirs.

*Munro* was apparently the first case to come before the California Supreme Court after the passage of § 377 in 1872. That court's own language tells how it arrived at its single action rule interpretation of § 377:

"In connection with this section, our attention is called to the act of 1862 (St. 1862, p. 447;) and it is said that section 3 of that act prescribed that the action should be brought by the personal representative of the deceased alone, and prescribed the rule of damages in these words: 'The jury may give such damages, pecuniary and exemplary, as they shall deem fair and just, *and may take into consideration the pecuniary injury resulting from such death to the wife and next of kin of such deceased person,*'—and that when enacted in the Code the words in italics were omitted therefrom. The counsel for defendant proceeds to give the reason for this change in the enactment. The reason so given by counsel is that the heirs were given the right to

maintain the action, and hence its re-enactment was not necessary, because, in an action brought by them, as a matter of course, their pecuniary injuries should be taken into consideraton. We do not think that such is the proper construction of section 377. In our judgment, but one action is permitted, and that action may be brought either by the heirs of the deceased or by his personal representatives; and, when one action is brought, and the court has obtained jurisdiction of it, that is the only action which the statute permits. As, for instance, when the personal representative of the deceased brings an action to recover damages for the act or neglect causing death, if another action is afterwards brought by the heirs of the deceased, the pendency of the prior action may be well pleaded in abatement of it; or, if a judgment has been rendered in the first, such judgment may be well pleaded in the bar of the second action." 24 P. at 304–305.

That the California court in *Munro* construed § 377 so as to comport with the previous statute of 1862 is hardly open to doubt. It stayed with that construction in *Salmon,* and even after many amendments, including the one around which the controversy centered in *Mayerhoff,* it stayed with that construction. Ignoring that *Munro* showed the origin of that construction to have been the earlier California statute, the *Mayerhoff* court strains to explain that the legislature never stepped in, and hence the word "an" prefacing the word "action" necessarily has to lead to single action construction. There is merit, however, in *Mayerhoff's* observation regarding the 1949 amendment which provides additional lan-

---

3. The full text of § 3 of the earlier act, Calif. Stat. 1862, p. 447, reads:

"Every such action shall be brought by and in the names [of] the personal representatives of such deceased person, and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin, in the proportions provided by law in relation to the distribution of personal prop-

erty left by persons dying intestate; and in every such action, the jury may give such damages, pecuniary and exemplary, as they shall deem fair and just, and may take into consideration the pecuniary injury resulting from such death to the wife and next of kin of such deceased person; *provided,* that every such action shall be commenced within two years after the death of such deceased person."

guage not theretofore present in § 377 and which, with respect to any damages recovered, declares: "The respective rights of the heirs and dependent parents in any award shall be determined by the court." This provision is in and of itself an incorporation of the similar provision in the "single-action" Lord Campbell's Act, and the provision in the California 1862 act which had been replaced by § 377 in 1872. In California a man is killed and the jury assesses his worth as to his heirs and dependent parents, and then the court divides the worth.

On the other hand, Idaho has not gone that route. In Idaho damages in a wrongful death action are unlike damages for property loss, in that those heirs entitled to recover are entitled to a verdict which is dependent on many circumstances. Each entitled heir receives from the jury a determination as to that which will fairly compensate him or her. In *Hepp v. Ader*, 64 Idaho 240, 130 P.2d 859 (1942), this Court affirmed the jury's verdict of $1,500 to the adult daughter for the death of her mother and the jury's verdict of $10,000 general damages to the surviving husband. Justice Givens, in dissent, unsuccessfully urged the adoption of the California rule, contending that the father's recovery "would be for the benefit of all the heirs and representatives who participated as plaintiffs." 64 Idaho at 252, 130 P.2d at 865. Justice Ailshie, the author of *Whitley*, did not agree with Justice Givens, nor did any other member of the Court, but Justice Ailshie would have set aside the verdict to the daughter solely on the basis of insufficiency of the evidence. That Justice Ailshie did not join with Justice Givens is a clear indication that Justice Ailshie was aware when he wrote *Whitley* that Idaho did not see our wrongful death action as imposing upon heirs the obligation to seek a single award by joining in some other heirs' existing action, or else risk being thereafter precluded. In *Whitley*, as in *Salmon*, both courts, under identical codes of procedure, recognized the right in a defendant to cause other heirs to be brought in, and also that that right could be procedurally waived.

BAKES, Justice, dissenting:

A review of the salient facts of this appeal is necessary to point out the erroneous rationale of the majority opinion.

On January 13, 1973, one of the Hermanns' attorneys wrote plaintiffs' attorneys, who were then representing Stephen McGrath, the husband of the deceased, and requested that McGrath amend his complaint to include an allegation that "the plaintiff is the sole and only heir of the decedent" since McGrath was not bringing the suit as the personal representative. The attorney for the defendants Hermanns closed the letter stating, "Please understand that I have no information leading me to think that there are heirs other than Mr. McGrath, but this is a technical matter that we would wish to have clarified." Obviously, the Hermanns' attorney was seeking to guard against multiple wrongful death actions against the Hermanns, exactly what later happened in this case.

On January 18, 1973, the plaintiff McGrath filed an amended complaint alleging "that the plaintiff, Stephen J. McGrath, is the surviving husband and sole and only heir of Carol Jean McGrath, deceased." McGrath's case was then set for trial on April 16, 1973, and the parties began preparing for that trial.

Sometime prior to March 13, 1973, the attorneys for McGrath discovered that the Hogans were heirs of the decedent and had a cause of action for her death. The respondents' brief indicates that McGrath knew of the existence of the Hogans, the decedent's parents, at the time he amended his complaint to allege that he was the sole heir of the decedent. Apparently, what was "discovered" in March of 1973 was that the old probate code, I.C. § 14–103 (repealed July 1, 1972), was in effect at the time of the decedent's death and that under that statute both the Hogans, the surviving parents, and McGrath, the surviving spouse, were heirs. Upon learning that they were heirs entitled to prosecute a wrongful death action against the Hermanns, the Hogans

retained McGrath's attorneys to prosecute their claim.[1]

Despite the fact that our wrongful death statute, I.C. § 5–311, clearly contemplates a single action for wrongful death in which all heirs must join, as the majority opinion recognizes, the Hogans consciously chose not to join McGrath's pending wrongful death action. Rather, the Hogans concluded it would be better strategy for them to pursue a separate lawsuit. Additionally, McGrath did not amend the allegation in his complaint to inform the court and defense counsel that he was not the sole heir.

On Friday, April 13, 1973, three days before the trial of McGrath's action and approximately a month after McGrath's attorneys had "discovered" that the Hogans could maintain an action as additional heirs, plaintiffs' attorneys contacted defendant Hermanns' counsel to discuss a settlement of the case. According to the affidavit of the Hermanns' counsel filed in the summary judgment proceeding, plaintiffs' counsel informed them that:

> "[D]efendants had missed a point and it seemed obvious to them that defendants were not going to find it if they had not found it by this time; they informed affiant that during legal research they had done about a month ago they had run across a point about which they were certain they were correct; [plaintiffs' counsel] informed affiant that in [plaintiffs' counsel's] opinion it would make a difference in the case; might well be an incentive to us to settle the case; but that they could not and would not reveal what the omission was unless and until affiant would assure them that affiant and his firm would not use the informa-

> tion to be given in any way to delay the beginning of the trial which had been set for case No. 23545 nor would such information be elicited during the trial for the purpose of continuing the trial;. . . . ."

After some discussion the defendants' attorney agreed to the disclosure of the information on those terms. Plaintiffs' counsel then disclosed that the decedent's parents were still living and that they were heirs under the statute and entitled to sue the appellants; that the parents had engaged them to prosecute their claim and that they had authority to settle both their claim and that of McGrath. The respondents' attorneys then proposed a settlement figure for both claims.

Defendants' attorney rejected that offer of settlement, and a discussion ensued about the joinder of the Hogans in the pending action by McGrath. The defendants' affidavit alleges that plaintiffs' counsel insisted that any move at that time to join the Hogans in the McGrath action would be a breach of the defendants' attorney's promise not to delay or seek a continuance of the trial by use of the secret information which he had just disclosed.

The defendants' counsel's affidavit asserts that they refused to consider settlement of the Hogans' claim on the grounds that the Hogans were aware of the pending action by McGrath and had chosen not to join in it, and would therefore be precluded by the statute from asserting their claim. The attorneys, however, were able to reach a negotiated settlement on McGrath's claim, a dismissal with prejudice of his suit was entered, and the question whether the Hogans could maintain a separate action was left open for later determination.[2]

---

1. One of the affidavits in the record in the summary judgment proceeding in this action suggests that the Hogans were not interested in recovering any money for themselves but "were willing that anything they may receive could go to Stephen M. McGrath to increase the total amount he would receive and affiant came away from these discussions with the impression that the plaintiffs in the above case, the parents of Carol Jean McGrath, were really not interested in recovering any money on their own but that they were more interested in

getting additional money for Stephen McGrath by virtue of their entry into the case in the settlement of their claim, if any."

2. The affidavit of Michael H. Felton, one of the attorneys for both the husband Stephen McGrath and the plaintiffs Hogans states:
> "The negotiations resulted in an understanding between the attorneys representing all parties that the claim of Stephen J. McGrath would be settled for him alone without prejudice to the right of the parents of

The majority recognizes that in general all heirs must join or be joined together in one action and that a wrongful death action under I.C. § 5–311 cannot be split. But the majority then concludes that "[b]y voluntarily electing to settle an action with one heir at this time, with full knowledge of non-party heirs, appellants thereby waived the right to insist upon a single action joined in by all heirs." *Ante* at 904.

I disagree with the majority's conclusion for two reasons. First, the majority opinion misapplies the single action rule. Second, the question of waiver upon which the majority opinion is bottomed involves a factual issue which cannot be resolved against the defendants in a summary judgment proceeding.

## I

In *Whitley v. Spokane Ry. Co.*, 23 Idaho 642, 654, 132 P. 121, 124 (1913), this Court stated that, "It is also clear that the duty to bring [in the non-party heir] was equally as exacting on the part of the [defendant] railroad company as on the part of the plaintiff...." The majority opinion recognizes this by noting that the statute itself suggests "that if the action is not brought by the personal representative of the decedent, then all heirs must join or be joined together to prosecute one wrongful death action." *Ante* at 903. The Court further notes, in its analysis of the cases from other jurisdictions, that "the cases hold that separate actions usually cannot be maintained by the several beneficiaries entitled under the acts." *Ante* at 903. However, after accurately articulating the single action rule, the majority seemingly overlooks the fact that the Hogans were aware of their status as heirs at least a month before the trial of the McGrath action and consciously made the decision not to join in that action. Instead, they chose to file a separate action, as the record indicates, for the purpose of finessing a larger recovery.[3] If the decision

of the majority is really based upon waiver, as it purports to be, where is the majority's analysis of the "waiver" which necessarily must result from the Hogans' knowledge of their claim and the pending lawsuit, and their conscious decision not to join in that lawsuit? And where is the majority's analysis of the effect of the manner of disclosure of their claims by the Hogans to the Hermanns—the Friday before the opening of the Monday trial of the McGrath lawsuit—and then only after extracting a promise that the Hermanns would not use the "information ... in any way to delay the beginning of the trial.... nor would such information be elicited during the trial for purposes of continuing the trial"? While the majority opinion has stated that the rule of law in these cases is that all heirs have an equal obligation and must join in a pending action, it totally omits any discussion of the obligation of the plaintiffs Hogans to join in the pending action and the "waiver" resulting from their conscious decision not to join.

In support of its decision in this case, the majority relies strongly upon the Georgia case of *Southeastern Greyhound Lines v. Wells*, 204 Ga. 814, 51 S.E.2d 569 (1949), quoting at length from that case. However, what the majority opinion does not point out is that in that case the settlement made by the defendant with some of the heirs was prior to the commencement of *any* action by any of the heirs. When the five non-settling heirs then brought their action, it was the first and only wrongful death action which had been filed. The Georgia Court held that the settlement prior to any action did not preclude a *single* action brought by all remaining non-settling heirs. That is a far different situation than this case where one of the heirs had filed an action and other heirs consciously decided not to join but to proceed in a separate action.

the decedent to initiate their independent action for her death and *further without prejudice to the defendants to raise any defenses that they felt they might have including the*

*defense which they are now exerting.*" (Emphasis added.)

3. *See* note 1, *supra*.

The majority opinion does not discuss the recent case of *Mayerhoff v. Kaiser Foundation Health Plan*, 71 Cal.App.3d 805, 138 Cal.Rptr. 319 (1977), which appears to be essentially identical to this case. The *Mayerhoff* case was the second action against several wrongful death defendants. In the first, the defendants settled with the plaintiffs, the husband and child of the deceased wife, and that suit was then dismissed with prejudice. Thereafter, the defendants were again sued by the deceased's parents in another wrongful death action. On these facts, the California court held that the prior suit, even though concluded by settlement, barred a second suit by the other heirs.

I.C. § 5–311, like much of our early day procedural code, was adopted verbatim from the California Code. This Court has regularly held that the decisions of the courts of the state from which statutes are adopted are persuasive in interpreting our similar statutes. *Southern Idaho Pipe & Steel v. Cal-Cut Pipe Co.*, 98 Idaho 495, 499, 567 P.2d 1246 (1977); *Akichika v. Kellerher*, 96 Idaho 930, 933, 539 P.2d 283 (1975); *Intermountain Business Forms, Inc. v. Shepard Business Forms Co.*, 96 Idaho 538, 541, 531 P.2d 1183 (1975); *Simons v. Davenport*, 66 Idaho 400, 160 P.2d 464 (1945); *Short v. Thompson*, 56 Idaho 361, 375, 55 P.2d 163 (1936). At least as early as 1890, the California Supreme Court had construed their statute to permit only one action for wrongful death.

"In our judgment, but one action is permitted, and that action may be brought either by the heirs of the deceased or by his personal representative; and when one action is brought, and the court has obtained jurisdiction of it, that is the only action which the statute permits." *Munro v. Pacific Coast Dredging & Reclamation Co.*, 84 Cal. 515, 24 P. 303, 304–05 (1890).

The recent statement from the California Supreme Court is equally applicable in Idaho:

"In stating that an action for wrongful death is joint, it is meant that all heirs should join or be joined in the action and that a single verdict should be rendered for all recoverable damages; when it is said that the action is single, it is meant that only one action for wrongful death may be brought whether, in fact, it is instituted by all or only one of the heirs, or by the personal representative of the decedent as statutory trustee for the heirs; and when it is said that the action is indivisible, it is meant that *there cannot be a series of suits by heirs against the tortfeasor for their individual damages.*" *Cross v. Pacific Gas & Electric Co.*, 60 Cal.2d 690, 36 Cal.Rptr. 321, 388 P.2d 353, 355 (1964) (emphasis added).

While the majority opinion correctly states the Idaho rule to be that "all heirs must join or be joined together to prosecute one wrongful death action," *ante* at 903, for some reason the majority opinion does not even consider the effect of that rule on the Hogans' conscious decision not to join the existing action by McGrath. Rather, the majority finds a talisman which solves the case for them—waiver.

II

The majority's conclusion that the defendants Hermanns "waived the right to insist upon a single action joined in by all of the heirs," *ante* at 904, is a finding of fact made for the first time by this Court on appeal which is totally unjustified by our appellate practice. This case comes to us on appeal from a partial summary judgment in which the trial court struck the defendants' single action defense. The majority of this Court affirms on a different ground—a factual finding that "by voluntarily electing to settle an action with one heir at this time, with full knowledge of the other non-party heirs, appellants thereby waived the right to insist upon a single action joined in by all the heirs." *Ante* at 904. However, "waiver" requires an intentional and voluntary relinquishment of a known right. *Minidoka County v. Krieger*, 88 Idaho 395, 399 P.2d 962 (1964); *Nelson v. Hopper*, 86 Idaho 115, 383 P.2d 588 (1963); *Grover v. Idaho Public Utilities Comm'n*, 83 Idaho 351, 364

P.2d 167 (1961). On more than one occasion this Court has stated that "what constitutes a waiver is essentially a question of intention.... In order to establish a waiver the intention to waive must clearly appear, and a waiver ... will not be presumed or implied, contrary to the intention of the party whose rights would be injuriously affected thereby unless, by his conduct, the opposite party was misled to his prejudice, in the honest belief that such waiver was intended or consented to." *Smith v. Faris Kesl Constr. Co.*, 27 Idaho 407, 429, 150 P. 25, 32 (1915), quoted with approval in *Grover v. Idaho Public Utilities Comm'n*, 83 Idaho 351, 357–58, 364 P.2d 167, 171 (1961).

The majority does not recite all of the facts in the record that relate to the factual issue of waiver. While noting that the settlement made with McGrath and the release "drafted by appellants' counsel, relates solely to McGrath's personal damages suffered by the death of his wife," *ante* at 904, and that the decedent's parents were not mentioned, the majority makes no mention of the affidavit of the plaintiff Hogans' attorney, filed in the summary judgment proceeding, which admits that:

"The negotiations resulted in an understanding between the attorneys representing all parties that the claim of Stephen J. McGrath would be settled for him alone without prejudice to the right of the parents of the decedent to initiate their independent action for her death and *further without prejudice to the defendants to raise any defenses that they felt they might have including the defense which they are now asserting.*" (Emphasis added.)

On a motion for summary judgment the facts, and all inferences to be drawn therefrom, must be viewed in a light most favorable to the party opposing the motion for summary judgment. *Huyck v. Hecla Mining Co.*, 101 Idaho 229, 612 P.2d 142 (1980); *Wyckoff v. Board of County Comm'n of Ada County*, 101 Idaho 12, 607 P.2d 1066

(1980); *Jones v. Jones*, 100 Idaho 510, 601 P.2d 1 (1979); *Nielsen v. Provident Life & Acc. Ins. Co.*, 100 Idaho 223, 596 P.2d 95 (1979). If "what constitutes a waiver is essentially a question of intention," and if a waiver "will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby," as this Court said in *Smith v. Faris-Kesl Constr. Co., supra*, and *Grover v. Idaho Public Utilities Comm'n, supra*, how then on this record can this Court find that the Hermanns' intention was to waive their right to insist upon a single action joined in by all of the heirs, particularly in view of the plaintiffs' attorney's own affidavit which admits that the understanding of all the parties was that the defendants Hermanns were not waiving their defense by settling the first action?

The trial court did not spell out the reason for granting the partial summary judgment and striking the Hermanns' single action defense; however, there certainly was no mention of any "waiver" in the trial court's decision, and properly so, since it raises factual issues which our prior decisions clearly say cannot be resolved in a summary judgment proceeding. I.R.C.P. 56(c). *Pincock v. Pocatello Gold & Copper Min. Co.*, 100 Idaho 325, 597 P.2d 211 (1979); *Nielsen v. Provident Life & Acc. Ins. Co.*, 100 Idaho 223, 596 P.2d 95 (1979). *See also Joyner v. Jones*, 97 Idaho 647, 551 P.2d 602 (1976); *Gardner v. Hollifield*, 97 Idaho 607, 549 P.2d 266 (1976). For this Court to make that factual determination for the first time on appeal, on this record which conclusively discloses that there was no intention on the part of the Hermanns to waive their defense, it is difficult to comprehend.